UNITED STATES DISTRICT COURT
DISTRICT OF MINNESOTA

Reichel Foods, Inc.,            File No. 19-cv-02604 (ECT/KMM)

    Plaintiff,

v.                                         **OPINION AND ORDER**

Proseal America, Inc. and
Proseal UK, Ltd.,

    Defendants.

James A. Godwin, Godwin Dold, Rochester, MN; Ken D. Schueler, Dunlap & Seeger, Rochester, MN for Plaintiff Reichel Foods, Inc.

Eric M. Roberts, Ferlillia V. Roberson, Jeffrey S. Torosian and Mary M. Shepro, DLA Piper LLP, Chicago, IL; Richard R. Voelbel, Felhaber, Larson, Fenlon & Vogt, PA, Minneapolis, MN for Defendants Proseal America, Inc. and Proseal UK, Ltd.

Plaintiff Reichel Foods is a food products packaging and distribution company based in Rochester, Minnesota. Am. Comp. ¶ 1, 12 [ECF No. 44]. At some point (the record seems not to show precisely when), Reichel contracted to "sell millions of dollars of packed [food or snack] trays to Wal-Mart which would then be sold in Wal-Mart stores." *Id.* ¶ 16. Reichel alleges that, to meet its obligations under its Wal-Mart contract, "[o]n or about January 12, 2018, [it] entered into a contract with [Defendants] Proseal America and Proseal UK for the sale and installation of what was to be fully operable food packaging equipment." *Id.* ¶¶ 12. Proseal America is a Virginia corporation with its principal place of business in Richmond, Virginia. *Id.* ¶ 2; Am. Answer of Proseal America ¶ 2 [ECF No.

65]. "Proseal UK is a food packaging machine manufacturer incorporated under the laws of the United Kingdom. Proseal UK's principal place of business is in Manchester, United Kingdom, and its manufacturing facilities all are located in the United Kingdom." Malone Aff. ¶ 3 [ECF No. 58]. In this diversity case, 28 U.S.C. § 1332(a)(3), Reichel alleges essentially that the food packaging equipment Defendants delivered was defective and did not work as intended. In its amended complaint,[1] Reichel asserts claims against Proseal America and Proseal UK for breach of contract, ¶¶ 97–99 (count I), negligence, ¶¶ 100–103 (count II), breach of express warranties, ¶¶ 104–113 (count III), and breach of implied warranties, ¶¶ 114–124 (count IV). Reichel seeks damages, alleging among other things that the equipment for which it paid more than $1 million didn't work and that, as a result, it "lost millions of dollars in revenue from the Wal-Mart agreement[.]" *Id.* ¶¶ 16, 124.

Proseal UK seeks dismissal of Reichel's amended complaint for lack of personal jurisdiction under Federal Rule of Civil Procedure 12(b)(2) or, alternatively, for failing to state a claim upon which relief may be granted under Rule 12(b)(6). ECF No. 55. Proseal UK's motion will be denied insofar as it is based on a lack of personal jurisdiction. By designing, assembling, and testing high-priced, custom machinery that it intended Reichel to use in Minnesota, and then trouble-shooting problems identified with the equipment after its installation in Minnesota, Proseal UK purposefully directed its activities at

---

[1]    Reichel filed its original complaint commencing this case on September 30, 2019. ECF No. 1. Proseal America and Proseal UK filed motions to dismiss Reichel's original complaint on November 27, 2019. ECF Nos. 33, 38. In response to these motions, Reichel filed an amended complaint. ECF No. 44. Proseal America answered the amended complaint. ECF Nos. 61, 65.

Minnesota and established the "minimum contacts" sufficient to warrant the exercise of personal jurisdiction here. Proseal UK's motion will be granted based on its Rule 12(b)(6) argument because Reichel has failed to plead facts essential to its joint-venture theory of liability.

I

"Personal jurisdiction . . . is an essential element of the jurisdiction of a district . . . court, without which the court is powerless to proceed to an adjudication." *Ruhrgas AG v. Marathon Oil Co.*, 526 U.S. 574, 584 (1999) (second alteration in original) (citation and internal quotation marks omitted). "When personal jurisdiction is challenged by a defendant, the plaintiff bears the burden to show that jurisdiction exists." *Fastpath, Inc. v. Arbela Techs. Corp.*, 760 F.3d 816, 820 (8th Cir. 2014) (citations omitted). "To successfully survive a motion to dismiss challenging personal jurisdiction, a plaintiff must make a prima facie showing of personal jurisdiction over the challenging defendant." *Id.* (citations omitted). "But where, as here, the parties submit affidavits to bolster their positions on the motion, and the district court relies on the evidence, the motion is in substance one for summary judgment." *Creative Calling Sols., Inc. v. LF Beauty Ltd.*, 799 F.3d 975, 979 (8th Cir. 2015) (citations omitted). At the summary-judgment stage, a case should not be dismissed for lack of personal jurisdiction "if the evidence, viewed in the light most favorable to [the plaintiff], is sufficient to support a conclusion that the exercise of personal jurisdiction over [the defendant] is proper." *Id.* (citations omitted).

For the exercise of personal jurisdiction to be proper, it must comport with both the forum state's long-arm statute and due process. *Id.; see also* Fed. R. Civ. P. 4(k)(1)(A);

*Daimler AG v. Bauman*, 571 U.S. 117, 125 (2014). Because Minnesota's long-arm statute, Minn. Stat. § 543.19, is "coextensive with constitutional limits," this two-part issue boils down to one: whether the exercise of personal jurisdiction comports with due process. *Johnson v. Woodcock*, 444 F.3d 953, 955 (8th Cir. 2006). Due process requires that a defendant have sufficient "minimum contacts" with the forum state so that "maintenance of the suit does not offend traditional notions of fair play and substantial justice." *Daimler AG*, 571 U.S. at 126 (citations and internal quotation marks omitted). This means "actions by the defendant[s]" themselves must "create a substantial connection with the forum State" and provide "fair warning" to defendants that they may be subject to jurisdiction there. *Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 472, 475 (1985) (citations and internal quotation marks omitted). The "fair warning" requirement will be met if defendants have "'purposefully directed' [their] activities at residents of the forum, and the litigation results from alleged injuries that 'arise out of or relate to' those activities." *Burger King Corp.*, 471 U.S. at 472–73 (quoting *Helicopteros Nacionales de Colombia, S.A. v. Hall*, 466 U.S. 408 (1984)). Our Eighth Circuit Court of Appeals has identified five factors that district courts are to consider in determining whether a defendant has sufficient minimum contacts with the forum state to justify a finding of personal jurisdiction: (1) the nature and quality of contacts with the forum state; (2) the quantity of those contacts; (3) the relationship between the cause of action and the contacts; (4) the state's interest in providing a forum for its residents; and (5) the convenience to the parties. *Johnson v. Arden*, 614 F.3d 785, 794 (8th Cir. 2010) (citation omitted). The first three factors are of primary importance, and the remaining two are secondary. *Burlington Indus., Inc. v.*

4

*Maples Indus., Inc.*, 97 F.3d 1100, 1102 (8th Cir. 1996). A court must consider these factors in the aggregate rather than individually. *Northrup King Co. v. Compania Productora Semillas Algodoneras Selectas, S.A.*, 51 F.3d 1383, 1388 (8th Cir. 1995) (citation omitted).

The record, viewed in the light most favorable to Reichel, supports the exercise of personal jurisdiction over Proseal UK here. This (obviously) is not a case of general personal jurisdiction. Proseal UK is not "at home" in Minnesota. *Goodyear Dunlop Tires Operations, S.A. v. Brown*, 564 U.S. 915, 919 (2011). It is a foreign company organized under United Kingdom law. Malone Aff. ¶ 3. Its "principal place of business is in Manchester, United Kingdom, and its manufacturing facilities all are located in the United Kingdom." *Id.* If the exercise of personal jurisdiction is appropriate, it is through specific personal jurisdiction. On the surface, Reichel's allegations align with the concept of specific personal jurisdiction because there is a relationship between Reichel's claims in this case and Proseal UK's Minnesota contacts. Reichel's claims arise entirely from its allegations that the equipment Proseal UK designed and assembled for use in Reichel's Rochester, Minnesota facility did not work as intended. It is true that the quantity of Proseal UK's contacts with Minnesota is insubstantial. Apart from its role in developing the equipment delivered to Reichel, and the fact that it once sent one engineer to Minnesota to inspect the equipment, Proseal UK has, and has had, no contact with Minnesota. *Id.* ¶¶ 8–17, 24. Regardless, the nature and quality of Proseal UK's contact with Minnesota is enough, at least on this record, to warrant the exercise of specific personal jurisdiction.

The bottom line is that the evidence reasonably may be construed to show that Proseal UK designed, assembled, and tested equipment that was both complex and expensive knowing the equipment was intended for long-term use in Reichel's Minnesota location. In July 2017, Reichel received drawings of three possible designs of the equipment. Cerda Aff., Ex. A [ECF No. 46-1]. The design drawings were prepared by Proseal UK. *Id.* at 1 ("Our design team in the UK has come back with 3 different options for you to review."); 9–11 (including notices that Proseal UK owns the copyrights to the drawings); *see also id.* Ex. C at 14 [ECF No. 46-2 at 19] (describing "[UK] design team" as including Proseal UK employees Alistair Paton and Ben Taylor). Proseal UK assembled and tested the equipment at its UK premises. *Id.* Ex. E at 1 [ECF No. 46-2 at 36]("Tooling was manufactured [] in Richmond and we are shipping the tools today to be tested with line in the UK."); *id.* Ex. F at 4 [ECF No. 46-2 at 41] (indicating that "full systems" would be tested in the UK). The equipment was picked up from Proseal UK in late March 2018 for shipping to Proseal America. *Id.* Ex. G at 2 [ECF No. 46-2 at 44]. The equipment then traveled by truck from Proseal America's Richmond, Virginia location to Reichel in April. *Id.* Reichel alleges that Proseal UK participated in attempts to address the equipment's problems. Mem. in Opp'n at 3–4 [ECF No. 45]. For example, Cerda testifies that, after discovering that the equipment was designed so that "trays get loaded in the wrong direction" and learning that "the installers are having issues with the chain falling off," he requested assistance in an April 23 email to Proseal America's head of manufacturing, Evan Jones. Cerda Aff. ¶ 10, Ex. H at 2 [ECF No. 46-3 at 2]. In his same-day reply, Jones explained that the decision to load trays in that direction had been made by "design" and

6

referred Cerda to a drawing prepared by Proseal UK. Cerda Aff., Ex. H at 1. Regarding the chains, Jones wrote that "this is something the team is actively working on." *Id.* The record provides no definite identification of the individuals on "the team" Jones referred to in his message. (An August 29 email addressed to the "Reichel Team," identifies nine recipients with "prosealamerica.com" addresses and one recipient with a "prosealuk.com" address, *id.* Ex. I at 5–6 [ECF No. 46-3 at 8–9], but it is not clear whether those recipients are everyone who worked to solve the equipment's problems.) Cerda received design drawings prepared by Proseal UK depicting modifications intended to address some of the equipment's defects. *Id.* Ex. J [ECF No. 46-3 at 57–59]; Ex. K [ECF No. 46-3 at 62]. "Reichel also received replacement parts directly from the UK." *Id.* ¶ 15. Finally, a Proseal UK systems engineer traveled to Reichel's Rochester, Minnesota premises to inspect and work on the equipment. *Id.* ¶ 16–17, Ex. M [ECF No. 46-3 at 71]. The engineer was in Minnesota for two days—July 25 and 26, 2018. Malone Aff. ¶ 22. To summarize, then, the evidence viewed in a light most favorable to Reichel shows that Proseal UK purposefully directed these activities at Minnesota, and this case arises out of those activities.[2]

---

[2] Reichel alleges in the amended complaint and in its submissions in opposition to Proseal UK's motion to dismiss for lack of personal jurisdiction that Proseal UK "exerted direct control over the computerized components of Reichel's equipment in Minnesota" by installing and "threaten[ing] to engage a 'kill switch' to totally destroy the operability of Reichel's equipment." Am. Compl. ¶¶ 10, 87; *see also* Mem. in Opp'n at 4 (citing Cerda Aff. ¶¶ 19, 21). The determination that there is personal jurisdiction over Proseal UK is not based on these allegations.

It seems unremarkable to conclude that a foreign company subjects itself to the personal jurisdiction of courts in a given state when it designs, assembles, and tests customized, complex, million-dollar machinery knowing it is destined for use in that state and the suit against the company alleges serious defects in the machinery. Basic jurisdictional rules support this conclusion. *E.g.*, *Burger King*, 471 U.S. at 473 ("[A] forum legitimately may exercise personal jurisdiction over a nonresident who purposefully directs his activities toward forum residents.") (quotation omitted). So do the authorities Proseal UK cites in support of its motion. For example, Proseal UK argues that "the Eighth Circuit affirmed the dismissal of similar allegations against a German manufacturer" in *Viasystems, Inc. v. EBM-Pabst St. Georgen GMBH & Co., KG*, 646 F.3d 589 (8th Cir. 2011). Mem. in Supp. at 13–14 [ECF No. 57]. But *Viasystems* presented materially different facts from this case and shows why, by comparison, the exercise of personal jurisdiction over Proseal UK is proper here. In that case, Viasystems, a Missouri-based telecommunications equipment manufacturer, sued St. Georgen, a German manufacturer of component parts—cooling fans—included in Viasystems' equipment. *Viasystems*, 646 F.3d at 591–92. The court summarized the series of transactions leading to inclusion of St. Georgen's cooling fans in Viasystems' equipment:

> In 2007, Viasystems contracted to manufacture base units for Ericsson A.B., a Swedish company. Part of each base unit consisted of a cooling fan, and, at Ericsson's prompting, Viasystems purchased cooling fans that were manufactured by St. Georgen. The fans were manufactured in St. Georgen's Herbolzheim, Germany plant and shipped to Shanghai, China, where they were sold to ebm-papst Shanghai, a Chinese corporation, which resold them to Viasystems' Chinese subsidiary. After the fans were installed, the completed base

8

> units were sold to Ericsson for use in mobile phone facilities in Japan. At no point did the fans or base units enter the United States.

*Id.* These facts, the Eighth Circuit concluded, did not show that St. Georgen had established a deliberate or substantial connection with Missouri. *Id.* at 594. This makes sense. St. Georgen's products were manufactured in Germany, shipped to China, and installed there in products intended for use in Japan. *Id.* at 592. St. Georgen never expected its products to enter Missouri, much less to be used there for an extended time. This case is different. Proseal UK designed, assembled, and tested complex bespoke machinery knowing it would be used in Reichel's Minnesota facilities for an extended duration. Proseal UK also cites *Walden v. Fiore*, 571 U.S. 277 (2014), for the proposition that its knowledge "about Reichel's location . . . does not empower this Court to reach activities occurring entirely in the United Kingdom." Reply Mem. at 6 [ECF No. 70]. In *Walden*, Nevada plaintiffs sued a Georgia police officer in federal court in Nevada alleging that the officer's actions in Georgia damaged them. *Id.*, 571 U.S. at 279–81. The Supreme Court held that the federal court in Nevada lacked personal jurisdiction over the officer, explaining:

> [The officer's] actions in Georgia did not create sufficient contacts with Nevada simply because he allegedly directed his conduct at plaintiffs whom he knew had Nevada connections. Such reasoning improperly attributes a plaintiff's forum connections to the defendant and makes those connections "decisive" in the jurisdictional analysis. It also obscures the reality that none of [the officer's] challenged conduct had anything to do with Nevada itself.

9

*Id.* at 289 (internal citation omitted). Here, by contrast, the exercise of personal jurisdiction depends, not on the attribution of Reichel's Minnesota contacts to Proseal UK, but on Proseal UK's own deliberate contacts with Minnesota. In other words, it is true that "[d]ue process requires that a defendant be haled into court in a forum State based on his own affiliation with the State, not based on the random, fortuitous, or attenuated contacts he makes by interacting with other persons affiliated with the State," *id.* at 286 (quotation omitted), and Proseal UK's Minnesota contacts were deliberate and did not result from contacts with Reichel that may fairly be described as "random, fortuitous, or attenuated," *Burger King*, 471 U.S. at 475 (citation and internal quotation marks omitted).

The final two factors the Eighth Circuit instructs district courts to consider—which are, as noted earlier, of secondary importance—do not change things. Minnesota almost always will have an interest in providing a forum for its citizens, but nothing suggests that interest here is material or distinct in any relevant sense. It is true that litigating here may prove very inconvenient for Proseal UK, but no controlling authorities are cited to support the proposition that Proseal UK's inconvenience trumps a determination that a defendant purposefully directed litigation-provoking activities at a state.

II

In reviewing a motion to dismiss for failure to state a claim under Rule 12(b)(6), a court must accept as true all of the factual allegations in the complaint and draw all reasonable inferences in the plaintiff's favor. *Gorog v. Best Buy Co.*, 760 F.3d 787, 792 (8th Cir. 2014) (citation omitted). Although the factual allegations need not be detailed, they must be sufficient to "raise a right to relief above the speculative level[.]" *Bell Atl.*

*Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (citation omitted).  The complaint must "state a claim to relief that is plausible on its face." *Id.* at 570.  "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (citation omitted).

It helps to start by framing the issues.  Reichel alleges that Proseal America and Proseal UK are distinct business organizations.  Am. Compl. ¶¶ 2, 3.  However, Reichel's amended complaint rarely attributes conduct explicitly to one organization or the other and most of the time attributes conduct simply to "Defendants" or "Defendant."  For example, the amended complaint is 20 pages and 125 paragraphs long (not counting the prayer for relief), but neither Proseal America nor Proseal UK are referred to by name from paragraphs 22 through 73, though these paragraphs allege many facts substantiating Reichel's claims.  As part of its Rule 12(b)(6) motion, Proseal UK objected to Reichel's pleading approach.  In support of its objection, Proseal UK cited authorities from within this District dismissing "group-pleaded" complaints for violating the pleading standards of Rule 8.  Mem. in Supp. at 16–18 (citing *Blaylock v. Wells Fargo Bank, N.A.*, No. 12-cv-693 (ADM/LIB), 2012 WL 2529197, at *3 (D. Minn. June 29, 2012), and *Tully v. Bank of Am., N.A.*, No. 10-cv-4734 (DWF/JSM), 2011 WL 1882665, at *6 (D. Minn. May 17, 2011)).  Reichel did not respond—at least not directly—to this argument in its opposition brief.  Instead, it defended the amended complaint's group pleading by arguing that it plausibly alleges that Proseal America and Proseal UK were engaged in a joint venture with respect to their dealings with Reichel.  Group pleading is fine, Reichel's argument

11

implies, because pleading the plausible existence of a joint venture makes Proseal America and Proseal UK each liable for the other's actions. Reichel then argued specifically that Proseal UK is jointly liable for Proseal America's breaches of contract[3] and warranties and negligence. Mem. in Opp'n at 13–22.[4] The issue, then, is whether Reichel plausibly has

---

[3]  Reichel plausibly alleges it had a contract with Proseal America. Reichel does not plausibly allege that it had a contract with Proseal UK. (Thus Reichel's reliance on a joint-venture theory to hold Proseal UK accountable for Proseal America's breaches.) Why this is so requires explanation. In the amended complaint, Reichel alleges it contracted with both Proseal America *and* Proseal UK for the purchase of equipment. Am. Compl. ¶ 12. In support of its assertion that it contracted with both organizations, Reichel cites in its amended complaint to the "contract," which it alleges is "set forth in the documents attached hereto as Exhibit 'A.'" *Id.* Though no exhibit is attached to the amended complaint on file, an "Exhibit A" was filed separately. Exhibit [ECF No. 48]. That exhibit includes documents describing the equipment ordered and purchased by Reichel, a quote identifying the purchase price of $1,806,988.88, and a document titled "Terms & Conditions" describing the project's lead time, delivery, and payment terms, and an acceptance page evidently signed by Reichel's director of operations, Alfonso Cerda. *Id.* The exhibit also includes a bill of lading showing that the equipment was shipped to Reichel from Proseal America's place of business in Richmond, Virginia. *Id.* at 4–5. These documents, which may be considered because they are necessarily embraced by the pleadings, *MegaForce v. Eng*, No. 18-cv-1691 (ECT/HB), 2019 WL 413557, at *2 (D. Minn. Feb. 1, 2019), refer only to Proseal America, not to Proseal UK. ECF No. 48 at 9–19. In other words, the documents Reichel alleges comprise the contract show that Reichel contracted only with Proseal America. They do not plausibly show that Reichel contracted with Proseal UK.

[4]  One might infer from a careful read of Reichel's opposition brief that it thinks its negligence claim does not depend on plausibly alleging a joint venture. *See* Mem. in Opp'n at 22 ("Because Proseal UK has not shown that Reichel failed to state contract or warranty claims against its co-adventurer (Proseal America), Proseal UK's motion to dismiss Reichel's contract and warranty claims lacks merit."). But Reichel's negligence claim—just like its contract and warranty claims—is group pleaded. Am. Compl. ¶¶ 100–103. And nowhere in its opposition brief does Reichel distinguish Proseal UK's alleged negligent acts that might give rise to a claim against it independently. *See* Mem. in Opp'n at 22–26. Therefore, Reichel's negligence claim is understood also to depend on its joint-venture theory.

pleaded that Proseal America and Proseal UK were in a joint venture with respect to their production of equipment for Reichel.

"Under Minnesota law, a joint venture exists if there is (1) contribution by all parties; (2) joint proprietorship and control; (3) sharing of profits but not necessarily of losses; and (4) a joint venture contract." *Johnson v. Charps Welding & Fabricating, Inc.*, 950 F.3d 510, 521 (8th Cir. 2020) (citing *Rosenberg v. Heritage Renovations, LLC*, 685 N.W.2d 320, 332 (Minn. 2004)).[5] The absence of allegations plausibly showing one or more of these elements means the joint-venture theory fails. *See Dorsey & Whitney LLP v. Grossman*, 749 N.W.2d 409, 416–17 (Minn. Ct. App. 2008). "A joint venture imputes the relationship necessary for liability when parties otherwise lack one." *Charps Welding*, 950 F.3d at 521 (citation omitted); *see also Reimer v. City of Crookston*, 421 F.3d 673, 677–78 (8th Cir. 2005) ("Under the applicable Minnesota law, parties to a joint enterprise or joint venture remain jointly liable for the acts of coventurers even though the enterprise or venture allocates responsibility and control over the device that caused harm to only one of the participants.") (citing *Walton v. Fujita Tourist Enters.*, 380 N.W.2d 198, 202 (Minn. Ct. App. 1986)).

---

[5]     "As this action is in federal court based on diversity of citizenship, state law governs substantive law issues." *Paine v. Jefferson Nat'l Life Ins. Co.*, 594 F.3d 989, 992 (8th Cir. 2010) (citation omitted); *see also Erie R. Co. v. Tompkins*, 304 U.S. 64, 78 (1938). Reichel relies on Minnesota law for its joint-venture theory, owing presumably to its Minnesota citizenship. Proseal UK does not dispute the application of Minnesota law. *See* Reply Mem. at 10–14. Accordingly, Minnesota law will be applied.

Reichel does not plausibly plead at least the third element—profit sharing—meaning it has failed to plausibly allege the existence of a joint venture. Reichel argues that it has "plausibly alleged . . . that Proseal UK's association with Proseal America was *directed at profit*." Mem. in Opp'n at 18 (emphasis added). If that proposition were true, it wouldn't be enough. Alleging that a joint business venture is "directed at profit" says nothing about profit sharing. Every business venture is "directed at profit." The issue is whether Reichel plausibly alleges that Proseal America and Proseal UK shared profits, not whether their activities were "directed" toward earning profits. Regardless, the facts and law Reichel relies on to establish the profit-sharing element of Minnesota's joint-venture test are insufficient. In its opposition brief, Reichel cites to a single paragraph of its amended complaint as establishing profit sharing. *See* Mem. in Opp'n at 18–19 (citing only Am. Compl. ¶ 88). That paragraph reads: "There is no indication that the extensive association between Proseal UK and Proseal America was purely gratuitous." Am. Compl. ¶ 88. Saying that a business venture is not "purely gratuitous" does not plausibly suggest that organizations in the venture share profits. There are many (perhaps countless) ways to earn remuneration. The payment of wages, the payment of a fixed amount, the repayment of debt, or the payment of a commission, for example, may be part of a profit-directed business venture but are not "profit sharing." *Puckmaster, Inc. v. Metalbrik Equip., LLC*, No. 04-cv-2599 (ADM/JSM), 2006 WL 3526468, at *11 (D. Minn. Dec. 7, 2006). The cases Reichel cites do not help it. For example, Reichel cites *Krengel v. Midwest Automatic Photo, Inc.*, 203 N.W.2d 841 (Minn. 1973), for the propositions that the profit-sharing "element requires that parties associate for mutual benefit or gain" and

14

that "profit motive need not be shown by direct evidence." Mem. in Opp'n at 18. *Krengel* does not describe the profit-sharing element of Minnesota's joint-venture test so broadly or loosely. *Krengel* affirmed the finding of a joint venture based on trial evidence showing that the defendants actually shared profits. *Krengel*, 203 N.W.2d at 846–47. And as far as *Krengel* describes things, the profit-sharing element was not disputed. *Id.* at 846–47. Reichel cites another case, *Bray v. Chicago Rock Island & Pac. R.R. Co.*, 232 N.W.2d 97 (Minn. 1975), for the proposition that "there is no profit-sharing where one defendant associates with another as 'a gratuitous volunteer.'" Mem. in Opp'n at 18. That is a fair description of a rule described in *Bray*, 232 N.W.2d at 102, but that does not mean every non-gratuitous business relationship involves profit sharing. Neither *Bray* nor any other Minnesota case adopts that rule. Finally, Reichel cites *SMC Holdings, LLC v. McCann*, No. 15-cv-490 (JRT/LIB), 2017 WL 4325692 (D. Minn. Sep. 27, 2017), for the holding "that extensive involvement between defendants is prima facie evidence of profit sharing." Mem. in Opp'n at 18. But the case doesn't say that. In *SMC Holdings*, the court identified testimony and documents permitting the reasonable inference that "the parties certainly contemplated profit sharing consistent with a joint venture." *Id.*, 2017 WL 4325692, at *13. The court had no need to—and did not—articulate a rule that profit sharing may be presumed every time business organizations have "extensive involvement" with each other. Reichel's failure to plausibly plead the profit-sharing element of Minnesota's joint-venture test means it has failed to plausibly plead a joint venture and that, in turn, means Reichel has failed to plead plausible contract, warranty, and negligence claims against Proseal UK.

\*

Proseal UK argues that Reichel's claims against it should be dismissed with prejudice. Mem. in Supp. at 27. Proseal UK says that "two bites at the apple" is enough. *Id.* Doing that would deprive Reichel of any opportunity to—within the bounds of the applicable pretrial scheduling order—seek leave to amend its complaint to reassert claims against Proseal UK based on discovery. At this relatively early stage of the case, Reichel will not be deprived of that possibility.

### ORDER

Based on the foregoing, and all the files, records, and proceedings herein, **IT IS ORDERED** that:

1. Defendant Proseal UK's Motion to Dismiss [ECF No. 55] is **DENIED** insofar as it asserts lack of personal jurisdiction and **GRANTED** for failure to state a claim upon which relief can be granted; and

2. Plaintiff's claims against Defendant Proseal UK are **DISMISSED WITHOUT PREJUDICE**.

Dated:  May 21, 2020                          s/ Eric C. Tostrud
                                              Eric C. Tostrud
                                              United States District Court