## UNITED STATES DISTRICT COURT
## DISTRICT OF MINNESOTA

Reichel Foods, Inc.,                              Court File No. 19-CV-2604-ECT-KMM

                Plaintiff,

vs.

Proseal America, Inc., and
Proseal UK, Ltd.,

                Defendants.

## MEMORANDUM OF LAW IN SUPPORT OF MOTION FOR LEAVE TO AMEND COMPLAINT TO ADD PROSEAL UK, LTD AS A PARTY

## INTRODUCTION AND FACTUAL BACKGROUND

Plaintiff Reichel Foods, Inc. ("Reichel") requests leave to add Proseal UK, Ltd. ("Proseal UK") as a defendant in this action. This action arises from an ill-fated attempt for Defendant Proseal America, Inc. ("Proseal America") and Proseal UK to provide Reichel the equipment necessary to package new lines of product for its customer Wal-Mart. The products at issue are fresh produce packaged in plastic trays. Reichel filed this action to recover damages caused by the failure of sealing equipment manufacturers Proseal America, Inc. and Proseal UK, Ltd. The Court dismissed allegations against Proseal UK without prejudice pursuant to Federal Rule of Civil Procedure 12(b)(6) on the basis that the allegations against it were intertwined with the allegations of Proseal US and not adequately specific against Proseal UK. Docket No. 80. In its order, the Court allowed Reichel the chance to add Proseal UK as a defendant if Reichel could more precisely allege claims against Proseal UK.

Proseal UK designed and assembled specialized food-packing equipment for Reichel, facilitated shipment of that equipment from the UK to Reichel's Rochester, Minnesota facilities, monitored and controlled the equipment in Rochester, and helped troubleshoot that equipment's defects. Proseal UK primarily redesigned the equipment when it failed, sent an engineer to Rochester in an attempt to correct the failures, and threatened to shut down Reichel's equipment from the UK. In fact, Proseal UK did remotely shut down Reichel's equipment but fortunately after Reichel found alternative production means.

2

Proseal America did not act alone. Proseal UK and co-defendant Proseal America, Inc., ("Proseal America") combined time, labor, facilities, skill, and equipment to design, manufacture, distribute, and service Reichel's equipment. Both Proseal UK and Proseal America controlled aspects of both the design and ultimate failure of the equipment sold to Reichel. Both provided technical expertise. Both attempted to fix the equipment. Both sent engineers to Rochester. Both threatened to kill Reichel's equipment. In fact, Proseal America sought Proseal UK's approval before triggering the kill switch on the equipment that they referred to as a "bomb." These well-pleaded facts demonstrate Proseal UK's intimate involvement in the failure of the equipment it sold to Reichel with the assistance of Proseal America. As a result, Proseal UK's should be added as a defendant in this action, and the Court should grant Reichel leave to file its proposed Second Amended Complaint ("Second Am. Compl.").

In June 2017, Reichel met with Proseal America to learn more about Proseal equipment to discuss purchasing equipment to produce a new line for Wal-Mart. (Second Am. Compl. ¶ 13.) Proseal America indicated it would work closely with Proseal UK, which developed three equipment designs specific to Reichel's needs. (Second Am. Compl. ¶¶ 14-20.) Proseal UK designed, assembled, and tested Reichel's equipment it in its UK facilities and Reichel has received confirmation of that fact in emails and documents provided in discovery. (Second Am. Compl. ¶¶ 14-20.)

Proseal America's sales supervisor, Ashley Saxon sent Reichel's Director of Operations Alfonso Cerda an email on July 18, 2017, providing several layouts for the equipment prepared by Proseal UK and stating "[o]ur design team in the UK has come up

with 3 different options for you to review." (Second Am. Compl. ¶ 16.) This email forwards an email chain include messages from Eddie Holmes, Proseal UK's International Projects Manager, in which Mr. Holmes describes the drawings and discusses design specifics with Proseal America employees and on which Mr. Holmes copies Edward Hughes who, Reichel understands to be an engineer with Proseal UK and who has a prosealuk.com[1] email address as well as an email address for "Proseal uk [sic] Quote Drawings". (Second Am. Compl. ¶ 17.) This email chain also attaches three technical drawings indicating that they were drawn on July 13, 2017 by "ERH" who upon information and believe refers to Edward Hughes and bearing the following notation: "Proseal uk [sic] Ltd. Owns the copyright of this drawing which has been supplied in confidence. If therefore must not be used for any other purpose than that for which it has been supplied[.] Furthermore it must not be copied or disclosed (in whole or part) without the written permission of Proseal uk [sic] Ltd." (Second Am. Compl. ¶ 18.)

In an email dated November 29, 2017, Evan Jones of Proseal America and Mr. Holmes of Proseal UK would lead the "projects team" for the Reichel equipment. Reichel understands Mr. Jones to be the Head of Manufacturing for Proseal America. (Second Am. Compl. ¶ 19.) Many Proseal UK employees had their hands in designing Reichel's equipment. For example, in email dated February 21, 2018, Reichel was told that

---

[1] Attempting to access prosealuk.com or prosealamerica.com resolves to the same proseal.com website which includes on its home page phone numbers for both the American and British offices.

"the UK design team" included Alistair Paton and Ben Taylor both of whom had prosealuk.com email addresses. (Second Am. Compl. ¶ 20.)

On March 2, 2018, Tymoteusz Jastal, a Proseal UK engineer, wrote to Reichel and Proseal America representatives that he was designing Reichel's conveyer and denester systems and saying: "My name is Tim, and I'm designing the OC Conveyor's [sic] for your factory." (Second Am. Compl. ¶ 31.) On March 13, 2018, Mr. Jones of Proseal America indicated that testing of the full system would take place in the United Kingdom. (Second Am. Compl. ¶ 32.)

Proseal UK then shipped the equipment. (Second Am. Compl. ¶ 7.) After a brief stop in Virginia, it reached its final destination: Reichel's Rochester, Minnesota facilities. (Second Am. Compl. ¶ 7.)

When it became evident that the equipment did not work as promised and required, Reichel turned to both Proseal UK and Proseal America for help. Proseal America shifted blame to Proseal UK for some of the defects. For example, after Reichel informed Proseal America that the tray orientation was incorrect, Mr. Cerda received an email dated April 23, 2018, in which Proseal America informed Reichel that the UK design team "had to make the decision to run both trays LEL> [long-edge leading] due to the fact the shorter tray would not be sufficiently supported by the chains." Proseal America directed Reichel to review an explanatory document prepared by the Proseal UK design team. (Second Am. Compl. ¶ 41.) Reichel and Proseal UK communicated directly. (Second Am. Compl. ¶¶ 8-9, 22, 31, 36, 53, 57, 72, 75, 78, 84, 86-87). Proseal UK engineers attempted to fix the equipment's flaws. (Second Am. Compl. ¶¶ 10,63,64). Proseal UK engineers prepared

drawings of redesigned parts and shipped replacement parts from the UK to Rochester. (Second Am. Compl. ¶¶ 23, 31, 59, 62, 76, 79). Proseal UK also sent a systems engineer from the UK to Rochester to attempt to bring the equipment up to its promised capacity. (Second Am. Compl. ¶ 10, 63, 64). And in fact, Reichel received replacement parts directly from the United Kingdom. On June 28, 2018, Adele Locker, Proseal America's Spares and Service Contracts Supervisor emailed Joel Cockram from Reichel to indicate that they would ship a replacement part directly from Proseal UK. (Second Am. Compl. ¶ 62.)

On July 10, 2018, the equipment experienced issues with belts fraying on the equipment and rods in the tool sets getting bent repeatedly. Reichel informed Proseal America of these issues, and Proseal America and Proseal UK attempted to remedy the same, each individually sending an engineer to address the issues noted. (Second Am. Compl. ¶ 63.) On that date, Proseal America confirmed the visit and suggested one engineer would be from Proseal America and one would be from Proseal UK, saying, "[w]e have had some challenges coordinating the systems engineer from the UK. . . . One of our service engineers can arrive the 23rd, with the systems engineer arranging (sic) on the site the morning of the 24th." (Second Am. Compl. ¶ 63.)

The September 10, 2018 snag list is illustrative of Proseal UK's continued involvement with Reichel's equipment. That version of the snag list identifies numerous problems with the equipment. For five of the problems, the snag list specifically states, "Solution required from PSUK[,]" referring to Proseal UK. For other defects Proseal America assigned responsibility for solutions to Proseal UK engineers. The September 10, 2018 snag list identifies that new transfer arms were to be "Design[ed] in UK,

Manufacture[d] in USA." It also identifies the initials "DB" and "AP" as the individuals with "Responsibility" to correct scrappers and tray guides. Those are the initials of Alistair Paton and Derek Barrett, who were members of the Proseal UK design team. (Second Am. Compl. ¶ 76.) Proseal UK prepared drawings of redesigned parts in an effort to bring the equipment up to its promised capacity. For example, Mr. Cerda received an email on September 24, 2018 from Proseal America, which attached two Proseal UK drawings for new tray guides. Several Proseal UK engineers were copied on the email. The drawings are labeled "Proseal UK, Ltd." and are copyrighted by Proseal UK. (Second Am. Compl. ¶ 79.) On December 12, 2018, Proseal UK Design Engineer Rob Bryan emailed Mr. Cerda enclosing drawings he prepared of reconfigured denesters. (Second Am. Compl. ¶ 84.)

Near the end of the parties' relationship, Proseal UK threatened to operate what Proseal America called a "kill switch." Proseal UK directed the use of the kill switch as evidenced by a December 19, 2018 email from Mr. LeMasters of Proseal America admitting "I have verified at Jack's [Ralph of Proseal UK] request that the PLC code is password protected and the bomb I set for the correct time and date." (Second Am. Compl. ¶ 104.) Specifically, Reichel received an email from Proseal UK Systems Engineer Jack Ralph threatening that the "machines will go down today if the eWON internet connection is not restored." (Second Am. Compl. ¶ 105.)

Reichel brought suit against Proseal America and Proseal UK, advancing contract, express and implied warranty, and negligence claims. Proseal UK was successful on its motion to dismiss because the pleadings at that time did not sufficiently separate the actions

taken by Proseal UK into direct allegations, which have now been confirmed through discovery. As result, Reichel is now able to break out the specific allegations regarding Proseal UK's conduct in this matter in a fashion and manner that sufficient supports the claim against Proseal UK to satisfy the applicable standard on the instant motion.

Plaintiff has prepared a Second Amended Complaint including those specific allegations against Proseal UK as a defendant and requests this Court grant this motion for leave to file and serve that complaint. Declaration of James A. Godwin dated September 15, 2020 ("Godwin Decl.") ¶ 2, Exh. 1.

## ARGUMENT

## I.   THE COURT SHOULD LIBERALLY GRANT LEAVE TO ADD AN ADDITIONAL PARTY, ESPECIALLY AT THIS STAGE OF LITIGATION.

With leave of court, a party may amend its pleadings any time prior to trial. Either party "may amend its pleading only with the opposing party's written consent or the court's leave." Fed. R. Civ. P. 15(a)(2).[2] Furthermore, the "court should freely give leave when justice so requires." *Id*. In interpreting Rule 15, the United States Supreme Court stated:

> If the underlying facts or circumstances relied upon by a plaintiff may be a proper subject of relief, he ought to be afforded an opportunity to test his claim on the merits. In the

---

[2] Certain courts have held that that Fed. R. Civ. P. 21 controls if the proposed amendment adds an additional party. *See*, *e.g*., *Shulman v. Chaitman LLP*, 392 F.Supp.3d 340, 358 (S.D.N.Y. 2019) (citing *Bridgeport Music, Inc. v. UMG Recordings, Inc.,* 248 F.R.D. 408 (S.D.N.Y. 2008). In addition, the application of Rule 21 rather than Rule 15 does not change the result because deciding whether to permit joinder, courts should apply the "same standard of liberality afforded to motions to amend pleadings under Rule 15." *Id*. While not addressing any discord between the rules, the Eighth Circuit has applied Rule 15(a) to motions to amend to add parties. *See*, *e.g*., *Roberson v. Hayti Police Dept*., 241 F.3d 992, 995 (8th Cir. 2001) (applying Rule 15(a) in overturning the district court's denial of leave to amend to add a new party after an eleven-month delay.

> absence of any apparent or declared reason—such as undue delay, bad faith or dilatory motive on the part of the movant, repeated failure to cure deficiencies by amendments previously allowed, undue prejudice to the opposing part by virtue of allowance of the amendment, futility of amendment, etc.—the leave sought should, as the rules require, be 'freely given.'

*White Consol. Indus., Inc. v. Waterhouse,* 158 F.R.D. 429, 433 (D. Minn. 1994) (citing *Foman v. Davis*, 371 U.S. 178, 182 (1962) (granting a motion to amend the complaint to add a party directly related to issues arising out of the same occurrence noted in the initial complaint). In considering the propriety of an amendment to a pleading, the policy of the federal courts is to "accept the principle that the purpose of pleading is to facilitate a proper decision on the merits," and to avoid an approach which would relegate the process to "a game of skill in which one misstep by counsel [might] be decisive to the outcome." *Id*. at 434 (quoting *Foman v. Davis*, supra, 371 U.S. at 181-82).

The Eighth Circuit has also stressed the liberality of the rule observing as follows:

> Under the liberal amendment policy of Federal Rule of Civil Procedure 15(a), a district court's denial of leave to amend pleadings is appropriate only in those limited circumstances in which undue delay, bad faith on the part of the moving partly, futility of the amendment, or unfair prejudice to the non-moving party can be demonstrated. *Foman v. Davis,* 371 U.S. 178, 182, 83 S.Ct. 227, 9 L.Ed.2d 222 (1962); *Sanders v. Clemco Indus.,* 823 F.2d 214, 216 (8th Cir.1987).

*Roberson v. Hayti Police Dept.*, 241 F.3d 992, 995 (8th Cir. 2001) (original footnote omitted). A Rule 15(a) analysis often hinges on whether a claim is futile. An amendment is considered futile under Rule 15(a) if the claim "would not withstand a Motion to Dismiss for failure to state a claim upon which relief can be granted." *Cornelia I. Cromwell GST Trust v. Possis Med., Inc.*, 519 F.3d 778, 781–82 (8th Cir. 2008) (evaluating "futility" of

asserted claims under Fed. R. Civ. P. 12(b)(6) standard). Though courts apply the Motion to Dismiss standard in ruling on a Motion to Amend under a Rule 15(a) futility analysis, generally courts may not weigh the substance of the proposed amended pleadings to the same extent as would be appropriate on a Rule 12(b)(6) Motion.

Multi-Tech Sys., Inc. v. Dialpad.com, Inc., No. CIV. 00-1540 ADMRLE, 2001 WL 34624004, at *2 (D. Minn. Aug. 28, 2001). If a claim is not frivolous, arguments directed at the "substance" of a claim are "not appropriate." *Id*.

Additionally, Rule 15(a) futility analysis employs the *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 556–57 (2007) "plausibility" standard and the motion to dismiss standard under Rule 12(b)(6). *Ashcroft v. Iqbal*, 129 S.Ct. 1937, 1940–41 (2009) (clarifying that Twombly applies to all federal pleadings).

In this case, the proposed amendments provide additional factual allegations arising directly out of discovery conducted with Proseal US detailing the conduct of Proseal UK, and they separate out the factual allegations to an extent that addresses the Court's concerns expressed in the order granting the initial motion to dismiss.

## II.     THIS MATTER IS IN THE EARLY STAGES OF LITIGATION, AND THE DEADLINE TO ADD PROSEAL UK HAS NOT EXPIRED.

The parties have exchanged only an initial round of written discovery, but no depositions, or expert discovery has yet been commenced. Trial in this matter is not set until June 28, 2021. In addition, considering the deadline to move to add Proseal UK per this Court's scheduling order has not yet passed, Docket No. 104, there is no argument for undue delay or prejudice in granting this motion. Moreover, even if some sort of delay

could be suggested, mere delay is insufficient as a ground for denying a motion to amend. *Roberson* 241 F.3d at 995 (internal citations omitted) ("Delay alone is not a reason in and of itself to deny leave to amend; the delay must have resulted in unfair prejudice to the party opposing amendment.") Mere suggestion of theoretical prejudice is also insufficient. Rather, "[t]he burden of proof of prejudice is on the party opposing the amendment." *Id.* (citing *Sanders v. Clemco Indus.,* 823 F.2d 214, 216 (8th Cir.1987). Proseal UK cannot credibly argue that it is prejudiced by the amendment proposed because the Court has expressly granted Reichel permission to make the instant motion at this time.

## III.   THE FACTUAL ALLEGATIONS MADE IN THE AMENDED COMPLAINT ARE NOT FUTILE AND SATISFY THE *IQBAL/TWOMBLY* PLEADING STANDARD FOR ALL CLAIMS AGAINST PROSEAL UK.

Though courts apply the Motion to Dismiss standard in ruling on a Motion to Amend under a Rule 15(a) futility analysis, generally courts may not weigh the substance of the proposed amended pleadings to the same extent as would be appropriate on a Rule 12(b)(6) Motion. *See Birchwood Lab.*, 2011 WL 310238, at *5. If a claim is not frivolous, arguments directed at the "substance" of a claim are "not appropriate." *Multi–Tech Sys., Inc. v. Dialpad.com, Inc.*, No. 00–1540, 2001 WL 34624004, at *2 (D. Minn. Aug. 28, 2001) (citing Becker, 191 F.3d at 908).

Additionally, Rule 15(a) futility analysis employs the *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 556–57 (2007) "plausibility" standard and the motion to dismiss standard under Rule 12(b)(6). *Ashcroft v. Iqbal*, 129 S.Ct. 1937, 1940–41 (2009) (clarifying that *Twombly* applies to all federal pleadings). A party moving to amend under Rule 15(a) must support its claim with sufficient specificity to "'raise a right to relief above the speculative

level'" to satisfy *Twombly*. *Birchwood Lab.*, 2011 WL 310238, at (quoting *Twombly*, 550 U.S. at 556)).

On review of a Rule 12(b)(6) motion, a court must consider the facts alleged in the complaint and "all reasonable inferences that can be drawn from them" as true and in the light most favorable to the nonmoving party. *Bhd. of Maint. of Way Emps. v. Burlington N. Santa Fe R.R.*, 270 F.3d 637, 638 (8th Cir. 2001). To avoid dismissal, a complaint must merely include "sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). Requiring "plausibility" does not impose a "probability" requirement, and a complaint may proceed "even if it strikes a savvy judge that actual proof of [alleged] facts is improbable." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 556 (2007). All that is required is that the complaint supply enough facts to "raise a reasonable expectation that discovery will reveal [relevant] evidence." *Id*.

In this case, not only do the updated allegations supply enough additional facts for all claims made against Proseal UK, but discovery has uncovered additional relevant evidence of Proseal UK's involvement in every stage of the contracting process with Reichel and those allegations have now been added to the Second Amended Complaint. Therefore, the Court should allow Reichel to add Proseal UK as a defendant in this matter and pursue the claims made in the Second Amended Complaint.

### A. The Second Amended Complaint Includes Ample Factual Allegations to Make the Breach of Express and Implied Warranty Claims against Proseal UK Not Only Plausible, but When Proven, Successful.

In Minnesota, a claim for breach of express warranty requires establishing three elements: (1) the warranty's existence; (2) a breach of the warranty; and (3) a causal link

between the breach and the harm. *Peterson v. Bendix Home Sys., Inc.*, 318 N.W.2d 50, 52-53 (Minn. 1982). Minnesota law provides that (1) Express warranties by the seller are created as follows:

> (a) Any affirmation of fact or promise made by the seller to the buyer which relates to the goods and becomes part of the basis of the bargain creates an express warranty that the goods shall conform to the affirmation or promise.

> (b) Any description of the goods which is made part of the basis of the bargain creates an express warranty that the goods shall conform to the description.

Minn. Stat. § 336.2-313(1). Further, "[i]t is not necessary to the creation of an express warranty that the seller use formal words such as 'warrant' or 'guarantee' or that the seller have a specific intention to make a warranty . . ." Minn. Stat. § 336.2-313(2). Additionally, Minn. Stat. § 336.2-318 provides that "[a] seller's warranty whether **express or implied** extends to any person who may reasonably be expected to use, consume or be affected by the goods and who is injured by breach of the warranty." (emphasis added) The Minnesota Supreme Court has held that "those who purchase, use, or otherwise acquire warranted goods have standing to sue for purely economic losses. Those who lack any such connection to the warranted goods must demonstrate physical injury or property damage before economic losses are recoverable." *Kinetic Co. v. Medtronic, Inc.*, 672 F. Supp. 2d 933, 947 (D. Minn. 2009); *Minnesota Mining & Manufacturing Co. v. Nishika Ltd.*, 565 N.W.2d 16, 21 (Minn.1997). Under Minnesota's adoption of the Uniform Commercial Code, under the heading THIRD-PARTY BENEFICIARIES OF WARRANTIES EXPRESS OR IMPLIED provides, "[a] seller's warranty whether express or implied

extends to any person who may reasonably be expected to use, consume or be affected by the goods and who is injured by breach of warranty." Minn. Stat. § 336.2–318.

The Minnesota Supreme Court has even held that when a third-party suffers property damage from a product, that person may seek damages under the statute even if the party never used, purchased, or otherwise acquired the product. *Lloyd F. Smith Co., Inc. v. Den–Tal–Ez, Inc.*, 491 N.W.2d 11, 13–14, 16 (Minn. 1992).

In this case, Reichel has experienced both economic losses due the failure of the equipment to produce at the rate promised, and property damage on the basis of damaged and discarded trays, film, and produce that were rendered unusable by the failure of the equipment to operate consistent with the promised parameters. (Second Am. Comp ¶¶ 25, 26, 125, 134-135, 145-147, 158-159, 171-173). Proseal UK knew Reichel was going to use the equipment it designed and manufactured, and it knew the purpose for which Reichel was going to use it as it was informed of Reichel's requirements and participated early on in the sales and design process. Additionally, Proseal UK knew that the equipment was being used to create the products it was intended to create, that the equipment was supposed to produce that product at a given rate, and ultimately that the equipment never actually accomplished the rate of production it was warranted to produce. As a result, Proseal UK breached both the express warranty that the equipment would perform at certain level and that implied warranty that it would serve the purpose for which it was designed, manufactured, and sold.

Furthermore, Proseal UK undertook months' worth of ultimately unsuccessful remedial actions to address its breach. Reichel has borne the burden of Proseal UK's breach

14

and failure to remedy that breach. Reichel has lost millions of dollars in revenue and incurred tens of thousands of dollars in property damage as a result. Therefore, the Court should grant Reichel's motion for leave to add Proseal UK back to this matter and seek relief for the damages caused by Proseal UK's breach of both express and implied warranties.

**B. The Complaint Includes Sufficient Factual Allegations to Support the Negligence Claim against Proseal UK.**

The four basic elements of a negligence action in Minnesota are: duty, breach of duty, injury or harm, and proximate cause. Foreseeability is also an important consideration. In negligence cases, duty is an obligation to conform to a particular standard of conduct toward another. A legal duty may be imposed by common law or by statute. *Vaughn v. Northwest Airlines, Inc.*, 558 N.W.2d 736 (Minn. 1997); *Scott v. Independent School Dist. No. 709*, 256 N.W.2d 485 (Minn. 1977); *Lewellin v. Huber*, 465 N.W.2d 62 (Minn. 1991).

Proseal UK previously argued that Reichel has not alleged sufficient facts to establish duty or breach. (Proseal UK's Mem. Supp. Motion to Dismiss Am. Compl. 24.) Proseal UK ignores recent Minnesota Supreme Court precedent, which has emphasized (and reemphasized) a broad view of duty. Under Minnesota law, duty exists wherever a defendant's conduct "creates a foreseeable risk of injury to a foreseeable plaintiff." *Domagala v. Rolland*, 805 N.W.2d 14, 23 (Minn. 2011); see also *Warren v. Dinter*, 926 N.W.2d 370, 377 (Minn. 2019) (identifying "foreseeability of harm" as the measure of legal duty); *Fenrich v. The Blake Sch.*, 920 N.W.2d 195, 202 (Minn. 2018) ("foreseeable

15

risk of injury to a foreseeable plaintiff" establishes duty); *Senogles v. Carlson*, 902 N.W.2d 38, 47 (Minn. 2017) (duty exists where defendant "should have anticipated the harm"); *Montemayor v. Sebright Prod., Inc.*, 898 N.W.2d 623, 629 (Minn. 2017) (recognizing that, in design-defect claims, "a manufacturer's duty arises from the probability or foreseeability of injury to the plaintiff" (cleaned up)). Under Minnesota law, "one who undertakes to render professional services is under a duty to the person for whom the service is to be performed to exercise such care, skill, and diligence as men in that profession ordinarily exercise under the circumstances." *City of Eveleth v. Ruble*, 302 Minn. 249, 253, 225 N.W.2d 521, 524 (Minn.1974). This duty applies to design engineers. *See id*. (holding engineering firm that contracted to design a water treatment facility owed duty to the city for whom it performed its design services).

In this case, Proseal UK owed Reichel a duty to design and manufacture the equipment Proseal America sold to Reichel consistent with the terms of the contract Proseal America ultimately breached, with the care, skill, and diligence ordinarily exercised under the circumstances, and pursuant to Minn. Stat. §336.2-318 which provides Reichel a warranty for the equipment purchased as a matter of law. In *Julian Johnson Const. Corp. v. Parranto*, the Minnesota Court of Appeals determined that the counterclaim plaintiff on a negligence claim was due damages because the counterclaim defendant failed to complete its work in a satisfactory fashion causing damages. *Julian Johnson Const. Corp. v. Parranto*, 352 N.W.2d 808, 811 (Minn. Ct. App. 1984).

In *Julian Johnson Const. Corp.*, the defendants advanced three theories of recovery against the plaintiff in its counterclaim: negligence, and breach of two implied warranties.

16

*Id.* at 810. The court of appeals found sufficient evidence was presented under the negligence theory to hold in favor of the defendants on that basis and did not delve into the other claims. *Julian Johnson Const. Corp. v. Parranto*, 352 N.W.2d 808, 810 (Minn. Ct. App. 1984). The plaintiff entered into an agreement with a local government unit to complete roads in a development project area. *Id.* at 811. The plaintiff knew that the area was being prepared for development. *Id.* The defendants possessed the land at the time specified for performance. *Id.* The defendants were the actual recipients of the plaintiff's performance under the contract with the third party. *Id.* The trial court held that the plaintiff owed defendants a duty, had breached that duty, and that its breach caused damages to the defendants. *Id.* The court of appeals upheld the trial court's determination that the plaintiff was liable to the defendants based upon a finding at trial that the work was performed to benefit the defendants and the plaintiff knew or should have known based upon the evidence presented. *Id.* at 811.

Additionally, in the context of designing and manufacturing commercial equipment, the manufacturer and designer owes a duty to the ultimate purchaser of that equipment. *Minnesota Forest Prod., Inc. v. Ligna Mach., Inc.*, 17 F. Supp. 2d 892, 915 (D. Minn. 1998). (holding that the plaintiff can maintain a claim for negligent design of the sawmill against the defendant because the defendant owed a duty to perform its design services using the care, skill, and diligence that sawmill designers ordinarily exercise.). Whether that duty was breached is ultimately a fact issue which is disputed by the parties at this time, and should not be decided at this point in the proceedings, but a time where the Court can properly way the substance of the claims and not merely their facial plausibility. *Multi–*

*Tech Sys., Inc. v. Dialpad.com, Inc.*, No. 00–1540, 2001 WL 34624004, at *2 (D. Minn. Aug. 28, 2001). Moreover, Reichel has already alleged that the equipment designed and manufactured by Proseal UK was never fully operational, even after repeated remedial efforts that were also unsuccessful. Those allegations, if proven, will result in a successful claim against Proseal UK.

In this case it is undisputed that Reichel was the intended beneficiary of the design and manufacturing work performed by Proseal UK. Proseal UK contributed time, resources, and expertise at each and every stage of the process with Reichel. Proseal UK assigned managers and employees to design and manufacture the equipment sold to Reichel and worked with Proseal America to coordinate the equipment's shipment from the UK into Minnesota. (Second Am. Compl. ¶¶ 91-93, 97.) Proseal UK sent replacement parts directly to Reichel to remedy its failure to provide equipment that met the standards laid out in the agreement between Proseal America and Reichel. (Second Am. Compl. ¶ 62). Proseal UK made or participated in various attempts to solve the defects with the equipment it designed and manufactured for Reichel, (e.g., Second Am. Compl. ¶¶ 56-57, 60-64, 69,71-72), and Proseal UK sent at least one engineer to service the defective Proseal equipment at Reichel's facility. (Second Am. Compl. ¶ 64). These allegations as to time, property, and skill demonstrate that Proseal UK was aware of the duty it owed Reichel to provide adequate equipment and designed services. Proseal UK cannot credibly argue that Reichel was not the intended recipient and party to whom a duty was owed regarding the equipment it manufactured and designed, or that it did not know, directly and

18

unequivocally that it was designing, manufacturing, and ultimately coordinating shipment of its equipment directly to Reichel.

In accordance with the theory advanced and held sufficient in *Julian Johnson Const. Corp.* and *Minnesota Forest Prod., Inc.* the allegations contained in the proposed amendment complaint, if proven true, will result in a successful negligence claim against Proseal UK because Proseal UK failed to satisfy the duty imposed upon it by statute and common law by designing and manufacturing the equipment in a way that damaged Reichel's trays, film, and produce, and caused severe economic losses. As such, this Court should grant Reichel's motion for leave to amend and allow Reichel to pursue its negligence claim against Proseal UK.

## <u>CONCLUSION</u>

For the reasons set forth above, Plaintiff respectfully requests the Court grant its motion for leave to amend its Complaint and add Proseal UK, Ltd. as a defendant to this matter for the claims made against it.

Dated: September 15, 2020             **DUNLAP & SEEGER, P.A.**

                                                            */s/ Ken D. Schueler*

                                                            Ken D. Schueler (Atty. Reg. No. 190378)
                                                            30 3rd Street, Suite 400
                                                            P.O. Box 549
                                                            Rochester, MN 55903
                                                            Telephone: (507) 288-9111
                                                            Email: kds@dunlaplaw.com

                                                            and

**GODWIN DOLD**

*/s/ James A. Godwin*

James A. Godwin (Atty. Reg. No. 392020)
Rick A. Dold (Atty. Reg. No. 394847)
300 1st Ave NW, Suite 306
Rochester, MN 55901
Telephone: (507) 218-8383
Email: james@godwindold.com
          rick@godwindold.com

**Attorneys for Plaintiff Reichel Foods, Inc.**