## UNITED STATES DISTRICT COURT
## DISTRICT OF MINNESOTA

Reichel Foods, Inc.,                                      Case No. 19-cv-2604-ECT-KMM

           Plaintiff,

v.

                                                          **ORDER**

Proseal America, Inc.,

           Defendant.

This matter is before the Court on the Plaintiff Reichel Foods, Inc.'s Motion for Leave to File [Second] Amended Complaint to Add Proseal UK, Ltd as a Party. ECF No. 107. Proseal UK was a named party in Reichel's original complaint. Proseal UK moved to dismiss and Reichel filed a First Amended Complaint ("FAC"). FAC, ECF No. 44. Proseal UK moved to dismiss the FAC for lack of jurisdiction and for failure to state a claim and the District Court dismissed Reichel's claims against Proseal UK in a May 21, 2020 Order. The District Court concluded that Reichel had failed to state a claim against Proseal UK. ECF No. 80. In the motion now pending, Reichel seeks again to add claims against Proseal UK into the litigation. For the reasons that follow, Reichel's motion is granted in part and denied in part.

## I.    Background[1]

Reichel alleges that it purchased food-packaging equipment from Proseal America, Inc., but the equipment did not work for its intended purpose. Reichel's objective in obtaining the equipment was "to produce private label snacks in two tray sizes—medium and small" for Wal-Mart. Reichel and Proseal America's agreement specified how small food trays would be oriented in the equipment—namely "with the short edges leading and without the trays turning at any point in the process." The medium trays would require

---

[1]    The factual allegations relevant to the motion to amend are take from Reichel's proposed Second Amendment Complaint ("SAC"). ECF No. 110-1.

turning. However, the equipment never managed to produce the small trays at the speeds specified in the parties' agreement. SAC ¶ 22.

Before Reichel and Proseal America reached their agreement, Proseal America's representative explained to Reichel that he would "turn to Proseal UK to prepare designs and a quote for the equipment." SAC ¶ 15. Proseal UK prepared several options for how the machinery could be designed. SAC ¶¶ 16–18. Proseal UK enlisted several of its own employees to design Reichel's equipment. SAC ¶ 19–20. A Proseal UK engineer informed Reichel that he was designing the conveyor equipment for Reichel's factory, and Proseal America informed Reichel that testing of the full system would take place in the United Kingdom. SAC ¶¶ 31–32. However, Reichel asked for a "factory acceptance test" to be performed remotely prior to delivery to ensure that the system met its requirements. The defendants told them this was not possible. In April 2018, Reichel learned that Proseal UK "decided to build the conveyors in a manner that forced the small trays to be packed turned," contrary to Reichel's instructions. The defendants assured Reichel that the trays could be packed turned and Reichel's production requirements could still be satisfied. SAC ¶¶ 37–38.

Upon delivery of the equipment, Reichel saw that it could not produce wrapped trays at the rate required. When it told Proseal America of the problems, Proseal America's representative indicate that "the UK design team 'had to make the decision to run both trays LEL> [long-edge leading] due to the fact that the shorter tray would not be sufficiently supported by the chains'" and shared an explanatory document from the Proseal UK design team. SAC ¶¶ 41, 94.

When Reichel learned that the equipment failed to operate as it expected, it worked with both Proseal UK and Proseal America on "calibrating, modifying, fixing, and amending the equipment … to meet the specifications required," but the efforts were unsuccessful. SAC ¶¶ 23–24. Reichel, Proseal America, and Proseal UK used a "snag list" to track the problems with the equipment, examples of which indicate Proseal UK was heavily involved in attempting to fix the problems with the equipment it designed. SAC ¶ 53, 76. During this process, both Proseal UK and Proseal America informed Reichel that they intended to ensure the equipment would meet Reichel's needs. SAC ¶ 57. Some of the efforts made short-term improvements, but ongoing problems never achieved the productivity Reichel

required. SAC ¶¶ 58–89. Reichel ultimately lost revenue from its arrangement with Wal-Mart because the equipment could not produce the food-packaging trays as anticipated. SAC ¶¶ 25–26.

Based on these allegations, Reichel asserts claims for breach of contract, negligence, and breach of express and implied warranties against Proseal America. SAC ¶¶ 114–20, 127–36, 149–60. Reichel also seeks leave to add the following claims against Proseal UK: negligence in the design and manufacture of the equipment (SAC ¶¶ 121–26); breach of express warranties (SAC ¶¶ 137–48); and breach of implied warranty (SAC ¶¶ 161–74).

## II.      Legal Standard

As is relevant here, the Federal Rules of Civil Procedure provide that "a party may amend its pleading only with the opposing party's written consent or the court's leave." Fed. R. Civ. P. 15(a)(2). "The court should freely give leave when justice so requires." *Id.* Under Rule 15(a)(2), a court can deny leave to amend in the following circumstances: (1) undue delay; (2) bad faith; (3) dilatory motive; (4) repeated failure to fix deficiencies in prior amendments; (5) undue prejudice to the non-moving party; or (6) futility of amendment. *Moses.com Sec., Inc. v. Comprehensive Software Sys., Inc.*, 406 F.3d 1052, 1065 (8th Cir. 2005).

## III.     Analysis

The defendants argue that Reichel's attempt to assert the negligence and warranty claims against Proseal UK should be denied for two main reasons. Def.'s Opp'n, ECF No. 114. First, Proseal America asserts that it would be prejudiced by Reichel's strategic delay in moving to amend the complaint. *Id.* at 6–8. Second, the defendants assert that Reichel's proposed amendments are futile. *Id.* at 9–13.

### A.      Delay and Prejudice

Although Proseal America raises the issue of delay, there is no dispute here that Reichel filed its motion in compliance with the scheduling order's deadline for moving to amend.[2] However, "a timely motion together with the liberal standard under Rule 15 does

---

[2]      This is not a case in which Reichel's motion to amend has come after the deadline for amending pleadings in the scheduling order expired. The scheduling order was amended on

*(footnote continued on next page)*

not mean that amendment is automatic." *United States ex rel. Higgins v. Bos. Sci. Corp.*, No. 11-CV-2453 (JNE/SER), 2018 WL 5617565, at *6 (D. Minn. Oct. 30, 2018). Nevertheless, "[d]elay alone is not enough to deny a motion to amend; prejudice to the nonmovant must also be shown." *Bediako v. Stein Mart, Inc.*, 354 F.3d 835, 841 (8th Cir. 2004). The burden of engaging in discovery is not a sufficient basis for finding prejudice that would warrant denying leave to amend. *Dennis v. Dillard Dep't Stores, Inc.*, 207 F.3d 523, 525 (8th Cir. 2000). Any prejudice to the nonmoving party must also be weighed against the prejudice to the moving party that would be caused by denial of leave to amend. *Bell v. Allstate Life Ins. Co.*, 160 F.3d 452, 455 (8th Cir. 1998).

Proseal America asserts that it will be prejudiced becuase Reichel first attempted to plead claims against Proseal UK on a theory that the two defendants were engaged in a joint venture. However, after the District Court found that Reichel failed to state a claim against Proseal UK under a joint-venture theory, Reichel did not seek leave to amend to add such a claim based on information it learned during the discovery process. Instead, Proseal America complains that Reichel is attempting to add negligence and breach-of-warranty claims based on facts that Reichel knew when this case was originally filed. According to Proseal America, allowing amendment would be prejudicial because: the deadline for completing discovery has passed;[3] any motion to dismiss filed by Proseal UK would not be decided until after fact discovery closed, and well into the expert-discovery period; and Proseal UK would not be able to take discovery. Finally, Proseal America asserts that any adjustment to the scheduling order will unjustifiably delay its entitlement to resolution of the claims against it and for its own counterclaim against Reichel. Def.'s Mem. at 7–8.

For several reasons, the Court is not persuaded that delay and prejudice are valid bases to deny leave to amend in this case. First, although Proseal America attributes the timing of Reichel's motion to amend to "strategic delay," Proseal America neither identifies

---

July 24, 2020 so that the deadline for amending pleadings was September 15, 2020. ECF No. 104. Reichel filed its motion to amend on September 15th. ECF No. 107. Therefore, Reichel does not need to show "good cause" for modification of a scheduling order pursuant to Fed. R. Civ. P. 16(b)(4).

[3]     Following the hearing on the motion to amend, the Court amended the scheduling order to allow certain discovery after the October 28, 2020 deadline. ECF No. 127.

any improper dilatory motive, nor suggests how Reichel would gain some strategic advantage by bringing the motion to amend when it did. Second, the Court notes that Proseal America's argument that Proseal UK would be prevented from taking discovery does not suggest that Proseal America will be prejudiced in any manner. Third, the possibilities that Proseal UK would make a motion to dismiss that would take time to resolve or that the scheduling order may need to be adjusted if Proseal UK is allowed to become a party do not show any prejudice to Proseal America. Rather, they simply suggest that final resolution of this lawsuit may be delayed. Moreover, given that both of the Proseal entities are likely to be represented by the same lawyers in this action, any motion to dismiss the claims against Proseal UK would likely mirror the futility arguments Proseal America has already raised in response to the motion to amend. Further, the ongoing and currently worsening COVID-19 pandemic makes it extremely unlikely that this case could proceed to a trial in the near future even if amendment were not allowed. As a result, delay in the resolution of this proceeding is inevitable and can accommodate the need to bring Proseal UK up to speed.

Finally, the Court notes that Proseal America cites only *United States v. Boston Sci. Corp.*, 2018 WL 5617565, in support of its argument. Beyond pointing out the *Boston Scientific* court's observation that a timely motion to amend may nevertheless be denied based on unduly prejudicial delay, Proseal America does not explain why this case is comparable. In *Boston Scientific*, the plaintiff was a relator bringing a *qui tam* action under the False Claims Act, but he sought leave to amend on the last day permitted by the scheduling order to assert a claim under the California Insurance Fraud Protection Act ("CIFPA"). *Id.* at *2. The court found that the relator's attempt to add such a claim was unfairly prejudicial to the defendant because the relator offered no explanation for failing to bring the claim earlier, addition of the CIFPA claim would require a pause in the proceedings while the State of California decided whether to intervene, and addition of the claim would inject new and different substantive elements into the litigation such that the CIFPA claim would become the real body of the case, making the original claims mere appendages. *Id.* at *6–8. Here, it is true that Reichel has not offered much of a satisfactory explanation as to why it waited so long to pursue negligence and breach-of-warranty claims based on facts known to it well before the motion to amend was filed. But the similarities to *Boston Scientific* end there. Nothing about the addition of these claims against Proseal UK will require a pause in the proceedings while a governmental entity decides whether to intervene. And there is no indication that the

5

negligence and breach-of-warranty claims against Proseal UK would overshadow the existing claims against Proseal America. Indeed, it appears that Proseal UK has already been the subject of some discovery in this case, much of the discovery already conducted would be available to Proseal UK, and any additional period of discovery could be conducted by Proseal UK relatively quickly.

For these reasons, the alleged delay and prejudice do not provide valid reasons to deny leave to amend under the circumstances of this case.

### B.    Futility

Having found that Reichel's motion to amend should not be denied based on Proseal America's assertion of undue delay and prejudice, the Court turns to the argument that Reichel's proposed claims against Proseal UK are futile. A motion to amend can be denied on futility grounds when the amended complaint "could not withstand a motion to dismiss under Rule 12(b)(6) of the Federal Rules of Civil Procedure." *Cornelia I. Croswell GST Trust v. Possis Medical, Inc.*, 519 F.3d 778, 782 (8th Cir. 2008). To survive a motion to dismiss for failure to state a claim, the proposed amended complaint must contain "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. v. Twombly*, 500 U.S. 544, 570 (2007). "'A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged.'" *Ness v. Gurstel Chargo, P.A.*, 933 F. Supp. 2d 1156, 1162 (D. Minn. 2013) (quoting *Ashcroft v. Iqbal*, 550 U.S. 662, 678 (2009)).

### Negligence Claim

Proseal America argues that the proposed negligence claim against Proseal UK is futile because Reichel has failed to allege facts showing that Proseal UK owed Reichel any duty independent of Proseal America's contractual promise to orient food trays with the short-edge leading. In essence, Proseal America argues that Reichel's negligence claim is barred because any alleged acts of negligence by Proseal UK necessarily arise out of Reichel's contract with Proseal America. Def.'s Mem. at 9–10. The Court disagrees.

"Minnesota common law imposes an obligation on professionals, such as engineers, to perform their services with reasonable care and competence and imposes liability for damages that arise from the failure to do so." *Southern Minn. Beet Sugar Cooperative v. Agri Sys.*,

6

427 F. Supp. 3d 1026, 1032 (D. Minn. 2019) (citing *Gammel v. Ernst & Ernst*, 72 N.W.2d 364, 367 (Minn. 1955)). Such a negligence claim requires a pleading to set forth the following elements: "(1) the existence of a duty, (2) a breach of that duty, (3) that [the defendant's] negligence was the proximate cause of [the plaintiff's] damages, and (4) that a different outcome would have been reached but for [the defendant's] negligence." *Id.* 1032–33. "A person who undertakes to provide professional services has a duty to the recipient of the professional services to exercise such care, skill, and diligence as a person in that profession ordinarily exercises under the circumstances." *Id.* at 1033 (citing *City of Eveleth v. Ruble*, 225 N.W.2d 521, 524 (Minn. 1974)).

Proseal America cites *McNeill & Assocs., Inc. v. ITT Life Ins. Corp.*, 446 N.W.2d 181, 185 (Minn. Ct. App. 1989), for the proposition that a plaintiff cannot recover for a tort "[w]hen the gravamen of the complaint is breach of contract…." Def.'s Mem. at 9–10. However, Proseal America does not explain how the discussion in *McNeill* applies to the circumstances of this case. In *McNeill*, the plaintiff was attempting to recover in tort against the very same party against which it already had a breach-of-contract claim and there was no independent basis for a tort claim. 446 N.W.2d at 185 (finding that the trial court erred in finding that the defendant's conduct constituted conversion where "[a]ll property rights in IMI accounts arise from the purchase agreement" on which the plaintiff sought to recover). Because *McNeill* did not involve a plaintiff claiming that a third party owed a duty under a professional standard of care independent of any contractual arrangement the plaintiff entered with another party, its relevance is limited.

The proposed SAC plainly alleges that Proseal UK undertook the responsibility for designing and building the packaging equipment to be used in Reichel's facility, but it switched the tray orientation for the small trays contrary to Reichel's stated requirements. Reichel further alleged that this required "pack turning of small trays" and led to damages to food products, trays, increased labor costs, lost revenues, and other damages. SAC ¶¶ 125–26. Under these circumstances, the suggestion that Reichel has failed to allege a duty of care independent from the specifications in Reichel's contract with Proseal America is not persuasive. *See Southern Minn. Beet Sugar Coop.*, 427 F. Supp. 3d at 1033 (rejecting defendant's argument that professional negligence claim was barred because the alleged negligent acts arose out of the parties' agreement and noting that "[p]rofessional negligence is an independent tort, under Minnesota law, for which [the plaintiff] can seek recovery").

7

Here, the Court is mindful of the appearance of overlap between the contract specifications in Reichel's agreement with Proseal America and the negligence claim against Proseal UK. The Proseal defendants may ultimately be able to show that Reichel's alleged "breach of duty is indistinguishable from the breach of contract." *Bank of New York Mellon v. Jacobson*, No. A14-0966, 2015 WL 1757885 (Minn. Ct. App. Apr. 20, 2015). However, at this stage, given the fact that Minnesota common law recognizes a design engineer owes a duty or reasonable care, the Court cannot conclude that Reichel's proposed negligence claim is futile. *City of Eveleth*, 225 N.W.2d at 524. For these reasons, the motion to amend is granted to the extent Reichel seeks to add such a claim against Proseal UK.

### Express Warranty Claim

Proseal America argues that Reichel's proposed breach-of-express-warranty claim against Proseal UK is futile because the proposed SAC fails to identify any promise that Proseal UK made to Reichel before Reichel ordered the equipment. Def.'s Mem. at 11. The Court agrees. "An express warranty is created when a seller makes '[a]ny affirmation of fact or promise … to the buyer which relates to the goods and becomes part of the basis of the bargain….'" *Riley v. Cordis Corp.*, 625 F. Supp. 2d 769, 788 (D. Minn. 2009) (quoting Minn. Stat. § 336.2-313(1)(a)) (alterations and ellipses in original). "[A]n express-warranty claim is a contract claim…." *Id.* at 788 n.13. Reichel does not allege that it had any contractual arrangement with Proseal UK. Nor has Reichel pointed to any allegations showing that Proseal UK made an affirmation or promise to Reichel that became a part of the its bargain to purchase the packaging equipment from Proseal America.

In its reply, Reichel does not identify any promise that Proseal UK made to it before Reichel ordered the equipment. Pl.'s Reply at 13, ECF No. 119. Reichel argues that the Court should infer that such a promise was made because Proseal America "must have received the specifications it thought the equipment would meet from Proseal UK…." *Id.* However, Reichel does not identify any facts from its proposed amended complaint that would support such an inference. Accepting Reichel's argument would ask the Court to infer facts that have not been pled, which is contrary to the Court's responsibilities in assessing the plausibility of a claim under the standard established by Rule 12(b)(6). Drawing such an inference is even less supported in this case where Reichel acknowledges that "discovery has yet to uncover the express statement or warranty made by Proseal UK…." *Id.*

Reichel suggests that its express-warranty claim is not futile because it could be a third-party beneficiary of an express warranty made by Proseal UK to Proseal America. Reply at 13–14. Under the relevant third-party beneficiary statute, "[a] seller's warranty … extends to any person who may reasonably be expected to use, consume or be affected by the goods and who is injured by breach of the warranty." Minn. Stat. § 336.2-318. Reichel has not alleged facts showing it is an intended third-party beneficiary because Reichel has not identified any express warranty that Proseal UK made to Proseal America regarding the equipment.

For these reasons, the Court concludes that Reichel's proposed breach-of-express-warranty claim against Proseal UK is futile and the motion to amend is denied to the extent Reichel seeks to add such a claim.

### *Implied Warranty Claim*

In its opposition memorandum, Proseal America did not argue that the claim that Proseal UK breached an implied warranty was futile. Because Proseal America has raised no such argument, the Court concludes that it does not oppose the addition of such a claim on futility grounds. Accordingly, the Court concludes that leave to amend should be permitted to allow Reichel to pursue such a claim against Proseal UK in this litigation.

## III.   Order

Based on the discussion above, Reichel's motion to amend **(ECF No. 107)** is **GRANTED IN PART** and **DENIED IN PART** as set forth below.

1. The motion to amend is **DENIED** based on futility of amendment to the extent Reichel seeks to add a claim for breach of express warranty against Proseal UK.

2. The motion to amend is **GRANTED** in all other respects.

3. Reichel shall file its proposed amended complaint within seven days of the date of this Order.

Date: December 3, 2020

　　　　　　　　　　　　　　　　　　　　　*s/Katherine Menendez*
　　　　　　　　　　　　　　　　　　　　　Katherine Menendez
　　　　　　　　　　　　　　　　　　　　　United States Magistrate Judge