# UNITED STATES DISTRICT COURT
# DISTRICT OF MINNESOTA

| | |
|---|---|
| Reichel Foods, Inc. | Case No. 0:19-cv-02604-ECT-KMM |
| Plaintiffs, | |
| v. | **ORDER** |
| Proseal America, Inc., et al., | |
| Defendants. | |

This matter is before the Court on the following nondispositive motions: (1) Reichel Foods, Inc.'s motion to amend the scheduling order to allow additional claims, ECF No. 137; (2) Reichel's motion to compel discovery, ECF No. 168; and (3) Proseal America Inc.'s motion to enforce the scheduling order and strike Reichel Foods, Inc.'s motion to compel, ECF No. 183. As explained below, the Court concludes that Reichel has failed to demonstrate good cause for bringing its motion to amend after the applicable deadline expired. Therefore, Reichel's motion to amend is denied. However, the Court concludes that Reichel has shown good cause for bringing its motion to compel after the nondispositive motion deadline. As a result, Proseal America's motion to enforce the scheduling is denied and Proseal America is required to file a substantive response to Reichel's motion to compel within 14 days of the date of this Order.[1]

## I. Motion to Amend

Reichel seeks leave to file a Third Amended Complaint, which would add eight new counts and a claim for punitive damages. Reichel's proposed new claims include the following: (1) negligence per se; (2) violation of the Virginia Computer Crimes Act; (3) violation of the Computer Fraud and Abuse Act; (4) conversion; (5) breach of the covenant of good faith and fair dealing against Proseal America; (6) Tortious Interference with Contract against Proseal UK; (7) civil conspiracy; and (8) violation of the civil provisions of the Racketeer Influenced & Corrupt Organization Act. Third Am. Compl. ("TAC") ¶¶ 163–230. The Defendants argue that the motion to amend should be denied, in part, because Reichel has not shown good cause to allow amendment after the deadline established in the scheduling order. The

---

[1] Defendants specifically requested an award of fees in their motion to enforce the scheduling order. ECF No. 185 at 10–13. That request is denied.

Defendants further contend that the motion should be denied because none of the new claims would survive a motion to dismiss; adding the new claims now would be unfairly prejudicial; and because the motion was brought in bad faith. Because the Court finds that Reichel has failed to show good cause, the motion is denied. Alternatively, the Court concludes that permitting Reichel's proposed amendment would be unfairly prejudicial, and the motion is denied on this basis as well.[2]

**Legal Standards**

Federal Rule of Civil Procedure 15 provides that a court should give leave to amend freely when justice so requires. Fed. R. Civ. P. 15(a)(2). Under this standard, leave to amend should be denied only where the proposed amendment is the product of undue delay, bad faith, or dilatory motive; where the amendment fails to cure deficiencies in amendments previously allowed; where amendment would cause undue prejudice to the non-moving party; or where amendment would be futile. *See, e.g.*, *Moses.com Sec., Inc. v. Comprehensive Software Sys.*, 406 F.3d 1052, 1065 (8th Cir. 2005).

However, when a party seeks leave to amend after a scheduling order deadline, Rule 15's liberal approach gives way to a more exacting standard. Specifically, the moving party must show that there is "good cause" to modify the scheduling order to allow the untimely motion. Fed. R. Civ. P. 16(b)(4). The focus of the good-cause inquiry is whether the moving party can show that, despite its diligent efforts, it could not meet the applicable deadline. *Sherman v. Winco Fireworks, Inc.*, 532 F.3d 709, 716–17 (8th Cir. 2008) ("The primary measure of good cause is the movant's diligence in attempting to meet the orders' requirements.") (internal quotation marks omitted). If the moving party has failed to show diligence, courts will generally not allow untimely amendment merely because the nonmoving party would suffer no prejudice. *Id.* at 717. "Good cause may be shown by pointing to a change in the law, newly discovered facts, or another significant changed circumstance that requires amendment of a party's pleading." *Ellingsworth v. Vermeer Mfg. Co.*, 949 F.3d 1097, 1100 (8th Cir. 2020). However, the good-cause standard is generally not satisfied when the information on which a new claim is based was available to the moving party prior to the deadline. *IBEW Local 98 Pension Fund v. Best Buy Co., Inc.*, 326 F.R.D. 513, 522 (D. Minn. 2018).

**Rule 16 Analysis**

Based on adjustments to the original schedule, the deadline for filing motions to amend was September 15, 2020. ECF No. 104. Reichel's pending motion to amend was not filed until

---

[2] The Court does not address the Defendants' remaining arguments regarding bad faith or the viability of the proposed additional claims because the rulings explained in this Order adequately dispose of the pending motion.

December 18, 2020. As a result, the parties agree that Reichel must first demonstrate good cause.

Reichel asserts that it has shown good cause because it first learned the information supporting its proposed new claims after the September 15th deadline. There is a common basis for all the proposed claims: Reichel asserts that after Proseal America sold the tray-packing machines at issue in this case, the Defendants secretly installed a "kill switch" or "bomb" that would allow Defendants to render the equipment inoperable. Defendants also allegedly threatened to activate the "kill switch" unless Reichel agreed to provide payments that Defendants claimed were owed under Proseal America's contract with Reichel. The "kill switch" is a piece of software called a "programmable logic controller" or "PLC" code, which could be remotely engaged to require a password for the machines to run production. Voelbel Decl., Ex. 5, ECF No. 157. Without the password, Reichel would not be able to use the machines, and Proseal would withhold the password unless Reichel agreed to make the payments Proseal demanded.

The proposed Third Amended Complaint is not the first time allegations regarding the "kill switch" have appeared in this case. For example, Reichel's timely filed Second Amended Complaint ("SAC"), which is currently the operative pleading, includes several allegations about a "kill switch" or "bomb" that could be used to remotely prevent the equipment from running. SAC ¶¶ 11, 103–05. Reichel's SAC also references emails from December 2018 and March 2019 that refer to the PLC code. SAC ¶¶ 103–05. In fact, some allegations regarding the "kill switch" even appeared in Reichel's First Amended Complaint, which was filed in December 2019. Am. Compl. ¶¶ 10, 87, ECF No. 44.

Reichel acknowledges that it knew some information about the "kill switch" before the September 2020 deadline, but asserts that it learned new information about the software after the deadline. Specifically, Reichel asserts that during depositions in mid-October, a Proseal America engineer testified that he uploaded the software to the equipment after it had already been delivered to Reichel. Pl.'s Mem. at 5 (citing the deposition of Steven LeMasters), ECF No. 148. Proseal America's CEO, Gari Wyatt, similarly testified that he had personally requested installation of the PLC software, which Proseal UK designed. *Id.* at 5–6 (citing the deposition of Gary Wyatt). Reichel asserts that it was only during these depositions that it learned the software was uploaded to the equipment in late 2018, nearly a year after the sale. According to Reichel, it was not aware of the secret post-sale upload until these depositions, and that revelation gave Reichel the first indication that it may have a viable basis to assert the proposed new claims against the Defendants.

The Court is not persuaded that Reichel has shown good cause. Long before the deadline for amendment, Reichel knew that Defendants had the ability to remotely access the

equipment and had threatened to engage a "kill switch" that could render the machines inoperable. Reichel's own documents show that it knew substantial information about the so-called "kill switch" and about the Defendants' demands for payment to avoid a shut down. These documents include recorded phone calls between Reichel and Proseal personnel from January 2019 discussing the Defendants' ability to remotely shut off the equipment unless Proseal America received payments. ECF No. 142, Ex. 2; ECF No. 143, Ex. 2. In addition, on January 30, 2019, Proseal sent Reichel management an email regarding the need to "move the date on the kill switch," and the parties exchanged several other communications that day about the PLC software. Voelbel Decl., Exs. 6, 7, 8. On March 1, 2019, a Proseal UK engineer again emailed Reichel explaining that the equipment would "go down today" unless action was taken. *Id.*, Ex. 12. Reichel also submitted an affidavit in December 2019 discussing the Defendants' threats to shut down the equipment using a "kill switch." ECF No. 46.

On January 25, 2019, Reichel's attorney sent a letter to Proseal that, among other things discussed Defendants' threats to activate a kill switch to shut off the equipment. Voelbel Decl., Ex. 1. In that letter, Reichel alleged that engaging the kill switch without Reichel's authorization would constitute an "electronic trespass and utilization of computerized means to harm the business of another" in violation of 18 U.S.C. § 1030. *Id.* This is one of the statutes—the Computer Fraud and Abuse Act—that Reichel claims Defendants violated in its proposed Third Amended Complaint, but despite discussing the statute two years ago, it did not seek leave to add such a claim until after the deadline for amendment expired.

In addition, Proseal America produced documents on June 23, 2020, several months before the amendment deadline, that discussed the password-protected PLC code. These documents include an email chain with internal Proseal communications from December 2018 through January 2019. *Id.*, Ex. 19. In this email chain, on December 19, 2018, Mr. LeMasters emailed Proseal management discussing updates to the equipment and verifying "that the PLC code is password protected and that the bomb is set for the correct time and date." *Id.* Rob Watson of Proseal UK joked, in response: "Dear FBI/MI5: Its not an actual bomb." *Id.* On January 17, 2019, Mr. Wyatt noted that "Reichel foods do now know that the machines are due to switch off next week," and discussed whether Proseal had options for remotely extending the timeframe for the "switch off date." *Id.* Jack Ralph, a Proseal UK systems engineer, confirmed that the change could be made remotely for both machines. *Id.* Proseal produced other emails from January 7, 2019, discussing the password for the "bomb that definitely is not a bomb." *Id.*, Ex. 21. Another Proseal document produced prior to the amendment deadline reveals that Mr. Wyatt wanted to wait to password-protect the equipment to see if Reichel would follow through on its promise to get back to him about payment issues. *Id.*, Ex. 22. In a January 20, 2019 email, Mr. Ralph confirmed that he had adjusted the PLC code so that the machines would not be disabled until February 1, 2019. *Id.*

4

Reichel argues that the availability of this information does not show a lack of diligence on its part because the pre-deadline documents did not reveal that the PLC code software was installed after the sale. Reichel asserts that Proseal either negligently failed to provide or intentionally hid the post-sale-installation details until Proseal's witnesses were deposed in October. As a result, Reichel claims it could not have met the deadline. *See* Pl.'s Mem. at 11–13.

For three related reasons, this argument is not persuasive. First, Reichel has not shown that Proseal negligently or intentionally failed to produce information about the PLC code early enough for Reichel to meet the amendment deadline. Although Reichel admittedly knew about Proseal's ability to remotely render the equipment inoperable long before September 2020, Reichel has not shown that it sought written discovery specifically tailored to this issue. Reichel's discovery requests did not even mention the "kill switch," "bomb," or "PLC code." *See* Voelbel Decl., Exs. 24–27. Reichel does not explain why it did not seek specific discovery on this topic, which cuts against a finding that it diligently investigated the facts. This is especially true given that Reichel had concerns about potential claims related to the PLC code as far back as January of 2019.

Reichel suggests otherwise, pointing to an interrogatory asking Proseal America to "[d]escribe in detail all changes or modifications that have ever been considered, or which were implemented, for Reichel's model of equipment." Scheuler Aff., Ex. 16. Though the interrogatory is not specific to the "kill switch," Reichel cogently suggests that Proseal America's answer should have specified that the PLC code was added post-sale. In its answer to the interrogatory, Proseal America identified several modifications to the equipment that were made prior to the sale and stated that "approximately 31 modifications" were made to the equipment after delivery. *Id.* Regarding the 31 post-sale modifications, Proseal America directed Reichel's attention to a spreadsheet, but none of the entries reference the December 2018 upload of the PLC code. *Id.*; Scheuler Aff., Ex. 17; Ralph Decl. ¶ 6 (indicating the upload occurred on Dec. 19, 2018), ECF No. 156. Proseal America does not explain in its response to the motion to amend why it failed to disclose the post-sale upload in its answer to this interrogatory.

Though Proseal America's answer to the interrogatory is arguably incomplete,[3] the Court is not persuaded that this provides good cause for an untimely amendment because Defendants' other pre-deadline discovery responses provided adequate notice that the machines were altered with the PLC code after they were delivered to Reichel. As noted above, in June 2020, nearly three months before the amendment deadline, Proseal produced emails

---

[3] No motion to compel a more complete response to the interrogatory was filed, so the Court does not make any ruling here regarding the adequacy of Proseal's answer.

5

in which Proseal management and engineering personnel discuss making updates to the machines with the PLC code and refer to the software change as a "bomb." These emails are dated in December 2018, after the machines were sold. Voelbel Decl., Exs. 19–23. Reichel was well aware that Proseal could access the machines remotely long before these emails were produced, and the emails reveal and then reinforce that Proseal, in fact, modified the machines in December 2018 and January 2019, programming various dates when the equipment would shut down unless a password were entered. Reichel offers no explanation why these emails were insufficient to notify it, prior to the September 2020 deadline, that the "bomb" or "kill switch" was uploaded to the equipment and modified after the machines were sold.

Second, although Reichel received documents confirming Proseal's ability to remotely shut down the equipment in June 2020, it did not pursue depositions until after the amendment deadline. Def.'s Opp'n at 13–14, ECF No. 155. Reichel did not ask the Court to extend the amendment deadline before it expired, which it certainly could have done if it believed depositions would not occur until after September. This is not consistent with a diligent investigation that would support a finding of good cause.

Third, Reichel's counsel's January 18, 2019 letter referencing the Computer Fraud and Abuse Act undermines its assertion that it diligently investigated the details surrounding the disabling software at issue. The January letter makes clear that Reichel was concerned about potential claims arising out of Proseal's threat to deploy a "kill switch" long before the amendment deadline expired. The initial Pretrial Scheduling Order was issued on March 10, 2020, and it was modified on July 24, 2020 to extend the time for amendment of pleadings. It is unclear why, if Reichel was concerned about potential claims arising out of Proseal's potential implementation of a "kill switch," Plaintiff did not diligently pursue "kill switch" specific discovery or ask for modification to the amendment deadline if more time was needed to complete that investigation.

One of Reichel's additional arguments regarding diligence merits discussion. Reichel suggests that it could not have met the deadline because its counsel contracted the virus that causes Covid-19 and was unable to effectively work for several weeks. A party's failure to meet a deadline that is attributable to its counsel's illness or incapacity is certainly beyond that party's control, and could demonstrate good cause for a modification to a scheduling order in an appropriate case. However, Reichel's counsel did not contract the coronavirus or go into quarantine until after the amendment deadline had come and gone. Stip. at 2 (noting that Reichel's counsel was affected by Covid-19 after Oct. 28, 2020), ECF No. 129. Therefore, this is not a case in which counsel's illness or temporary incapacity prevented compliance with the deadline.

For these reasons, the Court finds that Reichel has failed to demonstrate good cause for its untimely motion to amend, and the motion is denied on this basis.

### *Undue Prejudice*

Even if Reichel had shown good cause to bring its motion to amend after the applicable deadline, Reichel's proposed amendment is denied because allowing it would be unfairly prejudicial to the Defendants. This case has been pending since September 2019. At its core, the parties' dispute is about whether Proseal delivered equipment to Reichel that met Reichel's needs and complied with the Defendants' express or implied warranties. *See* SAC ¶¶ 114–62. That relatively straightforward dispute has been the focus of the litigation throughout.

Reichel's proposed amendment, however, would dramatically transform and expand the litigation. It's proposed civil RICO claim alone introduces an entirely new theory of recovery, drastically alters the landscape of potential exposure for the Defendants, and would almost certainly justify a full reset of the scheduling order to allow the defense to defend against such claims. Even if some of the discovery and investigation that has been undertaken so far may be useful in examining Reichel's proposed civil RICO claim, the fact remains that none of the existing causes of actions shares elements with such a claim. Though perhaps not as profoundly, most of Reichel's seven other proposed new claims would similarly introduce new legal theories and require distinct factual inquiries for Reichel's investigation of its claims and Proseal's defense. Under these circumstances, the Court finds that allowing a sweeping expansion of this litigation after the close of discovery that would require substantial additional expense and impose additional burdens would be unfairly prejudicial to the Defendants. *Bell v. Allstate Life Ins. Co.*, 160 F.3d 452, 454 (8th Cir. 1998) ("[W]hen late tendered amendments involve new theories of recovery and impose additional discovery requirements, courts are less likely to find an abuse of discretion due to the prejudice involved."); Charles Wright & Arthur Miller, *Federal Practice and Procedure*, § 1487 Amendments With Leave of Court—When Leave to Amend May Be Denied, 6 Fed. Prac. & Proc. Civ. § 1487 (3d ed.) ("[I]f the amendment substantially changes the theory on which the case has been proceeding and is proposed late enough so that the opponent would be required to engage in significant new preparation, the court may deem it prejudicial.").

For this alternative reason, Reichel's motion to amend is denied.

## II. Motions to Compel and Enforce the Scheduling Order

In its motion to compel, Reichel seeks an order requiring Proseal America to produce documents withheld under the attorney-client privilege. Reichel argues that Proseal America's assertion of the privilege is vitiated by the crime-fraud exception. Reichel also argues that Proseal America waived its privilege claims because Proseal UK personnel were included on

several of the communications. In the Defendants' motion to enforce the scheduling order, they contend that Reichel failed to demonstrate good cause for filing the motion after the deadline for non-dispositive motions. Because the circumstances reveal that Proseal America delayed production of any privilege log until after the deadline and has provided no explanation for its failure to produce it earlier, the motion to enforce the scheduling order is denied.

### *Legal Standard*

A schedule may be modified to allow a motion to be filed after a deadline only where the moving party shows good cause. *See Petrone v. Werner Enterprises, Inc.*, 940 F.3d 425, 434 (8th Cir. 2019). "To establish good cause, a party must show its diligence in attempting to meet the progression order." *Id.* (quoting *Marmo v. Tyson Fresh Meats, Inc.*, 457 F.3d 748, 759 (8th Cir. 2006)).

### *Discussion*

On April 28, 2020, the Court entered an Order Amending Pretrial Scheduling Order, which extended the deadline for filing nondispositive and fact discovery motions until October 27, 2020. ECF No. 79. Subsequent amendments to the Scheduling Order on October 28, 2020, December 1, 2020, and January 15, 2021 did not change the nondispositive motion deadline. Reichel filed its motion to compel on January 28, 2021, three months after the deadline.

Reichel argues that it has good cause for bringing its motion after the nondispositive motion deadline passed because Proseal America did not provide a privilege log to Reichel until December 2, 2020. Reichel argues that it could not have brought its motion to compel earlier because it had to wait until Proseal America provided the information required by Rule 26(b)(5) to raise any challenge to Proseal's privilege claims. ECF No. 189 at 12–16. While Proseal America mentions that its privilege log was not produced until after the motion deadline, it asserts that Reichel had many options other than an untimely motion, including seeking a modification to the schedule or moving to compel a privilege log prior to the deadline. Instead of seeking such relief from the Court, Reichel merely told defense counsel in an email that it reserved its rights to challenge any documents withheld based on privilege claims.

In the end, neither party comes out of this mess looking particularly good. On the one hand, Reichel fails to explain why it waited so long to seek relief, beyond suggesting that it

8

thought the nondispositive motion deadline had been extended[4] and was trying to resolve the disagreement on its own, without burdening the Court. The effort to resolve issues without the need for Court intervention is laudable, and this Court has encouraged it in this case, as it does in every piece of civil litigation. But Reichel would have been on stronger footing here had it at least informed the Court prior to the deadline that its ability to assess any of Proseal America's privilege claims was impeded by the absence of a privilege log complying with Rule 26(b)(5).

On the other hand, however, Proseal America does not even attempt to explain why it took so long to provide a privilege log to opposing counsel. In fact, in its motion to enforce the scheduling order, it barely acknowledges that it waited until early December 2020 to produce one to opposing counsel. Having produced documents in June 2020, Proseal America had certainly already withheld documents based on its own privilege review. In the face of that reality and given its own unexplained delay, Proseal America's assertion that Reichel waited too long to raise any challenge to its privilege claims rings hollow. Indeed, Proseal America's delay in providing the privilege log was not in substantial compliance with the purpose or the text of Fed. R. Civ. P. 26(b)(5), calling into question their own diligence in making an adequate assertion of privilege. *Cf. RightCHOICE Managed Care, Inc. v. Hospital Partners, Inc.*, 489 F. Supp. 3d 907, 914–16 (W.D. Mo. 2020) (rejecting the defendants' suggestion that the plaintiffs were to blame for the defense's untimely production of a privilege log and noting that they did not "provide a privilege log until it was too late for Plaintiffs to do anything with it").

Given these circumstances, the Court concludes that granting Proseal America's motion to enforce the scheduling order would be to strictly enforce deadlines against Reichel while allowing Proseal America to avoid responsibility for causing the delay. The Court has the obligation to apply the Federal Rules of Civil Procedure in a manner that achieves not only a determination of the action that is "speedy and inexpensive," but also that is "just." Fed. R.

---

[4] The Court disagrees with Reichel's suggestion that the motion was timely; the Court did not explicitly extend the nondispositive motion deadline in any of the Orders referenced in Reichel's written submissions. However, Reichel's argument that the procedural history of this case left some uncertainty regarding the date by which such motions should be filed is more persuasive. The Court extended discovery in this matter, but no amendment to the scheduling order correspondingly moved the nondispositive motion deadline. Ordinarily it makes little sense to move one deadline and not the other because issues may arise late in the discovery period that require a court's attention. This case demonstrates the wisdom of tying those deadlines to each other and the fact that the Court did not do so here created ambiguity that is relevant to the good-cause analysis. *See Shank v. Carleton College*, 329 F.R.D. 610, 614–15 (D. Minn. 2019) (considering ambiguity in a scheduling order as a factor contributing to good cause).

Civ. P. 1. Because Proseal America's own conduct substantially contributed to the missed deadline, such a result would be unjust. This is particularly true given the importance of the privilege issues raised by Reichel in its motion to compel. *See Regan v. Trinity Distr. Servs., Inc.*, 251 F.R.D. 108, 110–11 (W.D.N.Y. 2008) (allowing defendants to conduct an untimely medical examination of the plaintiff although defendants knew the scheduling order's deadline had passed and they inadvertently failed to take action to ensure the opportunity would remain available).

Accordingly, Proseal America's motion to enforce the scheduling order is denied. Proseal America has not yet filed a memorandum in response to Reichel's motion to compel because it sought to have the motion stricken. As a result of this decision, Proseal America will be required to file a memorandum of law and supporting materials in response to the motion to compel. In addition to its briefing and any declarations, affidavits, and exhibits Proseal America submits, Proseal America shall also electronically provide the Court with a copy of its privilege log and the disputed communications for in camera review so that the Court can determine the issues presented by Reichel's motion.

### Confidentiality Designations

Finally, in its motion to compel, Reichel asked the Court to determine that Proseal improperly designated several pages of Gary Wyatt's deposition as "Attorney's Eyes Only" material. Though the motion was filed after the nondispositive motion deadline, the Court exercises its discretion to address the issue because a resolution of confidentiality designations prior to dispositive motions may ease the tasks facing the District Court later in this case.

Based on the record before the Court, it is not clear that this issue has been fully explored by the parties as part of the meet-and-confer process. This is not to suggest that the issue was not raised prior to the motion being filed, but only that the Court believes the issue may be resolved with additional discussion between counsel. Reichel's motion regarding the confidentiality designations is, therefore, denied without prejudice at this time. The parties' counsel shall engage in a telephone discussion on this issue within 14 days of the date of this Order. If, after that conversation, the parties are unable to reach an agreement on the issue, the parties shall jointly contact the Court to schedule a phone conference.

The Court notes, however, that "Attorney's Eyes Only" designations should be reserved for only the most sensitive information that would cause a party competitive harm if the opposing party (as opposed to the opponent's attorneys) were able to see the allegedly confidential material. This is most often warranted where a party using the designation is in litigation against a direct competitor and a mere confidentiality designation will not suffice to protect the designating party's legitimate interest in protecting its truly proprietary

information. With this guidance, Defendants should be certain that such a designation is warranted if they persist in an "Attorney's Eyes Only" claim.

## III. Order

Based on the discussion above, **IT IS HEREBY ORDERED THAT:**

1. Reichel's motion to modify the scheduling order and to amend is **DENIED**;

2. Proseal America's motion to enforce the scheduling order is **DENIED**;

3. Proseal America shall file a response to Reichel's motion to compel within 14 days as instructed above; and

4. The parties shall meet and confer in compliance with this Order's instructions regarding the designation of deposition testimony as "Attorney's Eyes Only" discovery material.

Date: April 30, 2021

*s/Katherine Menendez*
Katherine Menendez
United States Magistrate Judge