UNITED STATES DISTRICT COURT
DISTRICT OF MINNESOTA

---

Reichel Foods, Inc.,             File No. 19-cv-2604 (ECT/KMM)

         Plaintiff and
         Counter-Defendant,

v.

Proseal America, Inc.,

                                 **OPINION AND ORDER**

         Defendant and
         Counter-Plaintiff,

and

Proseal UK, Ltd.,

         Defendant.

---

Ken D. Schueler and John Thomas Giesen, Dunlap & Seeger, P.A., Rochester, MN; James A. Godwin, Godwin Dold, Rochester, MN; and Rick A. Dold, Godwin Dold, Winona, MN, for Reichel Foods, Inc.

Amy M. Rubenstein, Ferlillia V. Roberson, Eric M. Roberts, Jeffrey S. Torosian, and Mary M. Shepro, DLA Piper LLP (US), Chicago, IL; and Richard R. Voelbel, Felhaber, Larson, Fenlon & Vogt, P.A., Minneapolis, MN, for Proseal America, Inc. and Proseal UK, Ltd.

---

Plaintiff Reichel Foods, Inc. appeals two nondispositive orders issued by Magistrate Judge Katherine M. Menendez. In the first order, Magistrate Judge Menendez determined that Reichel had not shown good cause to file a proposed third amended complaint well after expiration of the controlling deadline. ECF No. 193. In her second order, Magistrate Judge Menendez denied Reichel's motions to compel the production of attorney-client privileged documents under the crime-fraud exception and to compel responses to

interrogatories and document requests.  ECF Nos. 211, 216.  These orders will be affirmed because they are neither clearly erroneous nor contrary to law.

I

A

On December 18, 2020, Reichel filed a motion seeking leave to file a third amended complaint.  ECF No. 137.  Because Reichel filed its motion well after the September 15, 2020 pleading-amendment deadline, ECF No. 104, Reichel also sought amendment of the scheduling order to allow its requested amendments, ECF No. 137.  To support these requests, Reichel claimed to have discovered two new facts in depositions taken after the September 15 amendment deadline that Reichel claimed were essential to pleading the eight new counts in its proposed third amended complaint.  First, Reichel learned that Defendants uploaded a PLC code (or "kill switch") to its food packaging equipment *after* Reichel had purchased it.  Second, Reichel discovered that Proseal UK programmed the kill switch and had done so at Proseal America's request.  *See* ECF No. 148 at 1.

Magistrate Judge Menendez determined that Reichel had not shown good cause to modify the scheduling order under Federal Rule of Civil Procedure 16(b)(4).  First, she found that Reichel did not act diligently to meet the amendment deadline.  Reichel knew about the kill switch since (at least) January 2019.  ECF No. 193 at 3–4.  Despite this knowledge, Reichel did not seek pre-deadline discovery tailored to the "kill switch," "bomb," or "PLC code."  *Id.* at 5.  Reichel also obtained discovery in June 2020—nearly three months before the September 15 amendment deadline—which showed Defendants could remotely access its machines and had programmed "various dates when the

2

equipment would shut down unless a password were entered." *Id.* at 5–6. Reichel's possession of this information undercut its contention that an "arguably incomplete" interrogatory response established good cause. *Id.* Reichel also failed to take depositions before the amendment deadline. *Id.* at 6. Magistrate Judge Menendez rejected Reichel's argument that its counsel contracting COVID-19 prevented it from timely seeking leave to amend or to extend the deadline, noting that counsel "did not contract the coronavirus or go into quarantine until after the amendment deadline had come and gone." *Id.*

Alternatively, Magistrate Judge Menendez concluded that permitting the proposed amendments would unfairly prejudice Defendants. The "straightforward" focus of this lawsuit since its inception, Magistrate Judge Menendez observed, was "whether Proseal delivered equipment to Reichel that met Reichel's needs and complied with Defendants' express or implied warranties." *Id.* at 7. Reichel's eight new claims would alter the litigation by "introduc[ing] new legal theories and requir[ing] distinct factual inquiries for Reichel's investigation of its claims and Proseal's defense." *Id.*

## B

Reichel also appeals Magistrate Judge Menendez's denial of two motions it filed to compel discovery. *See* ECF No. 211; Tr. of Mots. Hr'g ("Tr.") [ECF No. 216]. Reichel first sought to compel Proseal America to disclose some 37 emails under the crime-fraud exception to attorney-client privilege. ECF No. 170 at 9–20. In denying this motion, Magistrate Judge Menendez concluded that Reichel had not made a prima facie showing that the crime-fraud exception applied. In her view, the mere "temporal relationship" between the emails and Defendants' threats to activate the kill switch did not show that the

attorney-client communications were in furtherance of a crime.  Tr. 45–47.  Magistrate Judge Menendez also declined to review the emails *in camera* because they were unrelated to any claims in the operative Second Amended Complaint.[1]  Tr. 47–48.

Reichel's other motion sought to compel Proseal UK to respond to interrogatories and document requests served in January 2021.  ECF Nos. 200, 202.  Through a series of amended scheduling orders, fact discovery had, with limited exceptions, closed on October 28, 2020, and the time to file "[n]on-dispositive and fact discovery motions" closed on October 27.  *See* ECF Nos. 131, 127, 79.  Reichel filed this motion to compel on May 28, 2021.  ECF No. 200.  Magistrate Judge Menendez denied the motion on essentially three grounds.  First, she rejected Reichel's argument that fact discovery had been "re-open[ed]," meaning Reichel's motion was untimely.  Tr. 50.  Second, she found that the discovery Reichel sought was "overwhelmingly directed at issues that [were] only relevant to the Third Amended Complaint," and not the operative Second Amended Complaint.  Tr. 51.  Last, she found that Reichel had not acted diligently to meet the discovery deadline.  Tr. 52–54.

II

Together, Reichel's appeals challenge the denial of motions to modify the scheduling order, for leave to file an amended pleading, and to compel discovery.  All are nondispositive.  *See* Local Rule 7.1(b)(4)(A)(i) (providing that "[n]ondispositive motions

---

[1]     Magistrate Judge Menendez also rejected Reichel's motion insofar as it sought to compel disclosure of eight other emails under the voluntary disclosure doctrine.  *See* ECF No. 170 at 20–22.  Reichel has not appealed this ruling.

covered by this subsection include, for example: . . . motions to amend pleadings" and "discovery-related motions"); *Daley v. Marriott Int'l, Inc.*, 415 F.3d 889, 893 n.9 (8th Cir. 2005) (referring to a motion for leave to amend the complaint as a "nondispositive pretrial motion"); *Elkharwily v. Mayo Holding Co.*, No. 12-cv-3062 (DSD/JJK), 2014 WL 3573674, at *1–2 (D. Minn. July 21, 2014) (reviewing denial of motion to modify scheduling order as nondispositive).

Review of a magistrate judge's ruling on a nondispositive issue is "extremely deferential." *Scott v. United States*, 552 F. Supp. 2d 917, 919 (D. Minn. 2008). A nondispositive order may be overruled only if it is "clearly erroneous or contrary to law." 28 U.S.C. § 636(b)(1)(A); *accord* Fed. R. Civ. P. 72(a); Local Rule 72.2(a)(3). "A finding is clearly erroneous when although there is evidence to support it, the reviewing court on the entire evidence is left with the definite and firm conviction that a mistake has been committed. A decision is contrary to law when it fails to apply or misapplies relevant statutes, case law or rules of procedure." *Wells Fargo & Co. v. United States*, 750 F. Supp. 2d 1049, 1050 (D. Minn. 2010) (citations and internal quotations omitted).

III

A

Reichel's appeal of the order denying its motion to modify the scheduling order and for leave to file a third amended complaint implicates Rule 16(b)(4)'s "good cause" standard. Ordinarily, leave to amend is "freely give[n] . . . when justice so requires." Fed. R. Civ. P. 15(a)(2). When the time to amend under a court's scheduling order has passed, however, a moving party must first show good cause to modify the scheduling order under

Rule 16(b)(4), and only if that showing is made does a court proceed to the Rule 15 inquiry. *Shank v. Carleton Coll.*, 329 F.R.D. 610, 613–14 (D. Minn. 2019). "In other words, Rule 16 opens the door to Rule 15." *Id.* at 614.

Under Rule 16(b)(4), a scheduling order "may be modified only for good cause and with the judge's consent." "The primary measure of good cause is the movant's diligence in attempting to meet the order's requirements." *Sherman v. Winco Fireworks, Inc.*, 532 F.3d 709, 716 (8th Cir. 2008) (citation omitted); *see also* Fed. R. Civ. P. 16(b) advisory committee's note to 1983 amendment. "Good cause may be shown by pointing to a change in the law, newly discovered facts, or another significant changed circumstance that requires amendment of a party's pleading." *Ellingsworth v. Vermeer Mfg. Co.*, 949 F.3d 1097, 1100 (8th Cir. 2020). Upon a threshold showing of good cause, the court may then consider other factors, such as whether the nonmovant would be unfairly prejudiced by the requested modification. *Bradford v. DANA Corp.*, 249 F.3d 807, 809 (8th Cir. 2001). Even on a showing of good cause, the "court retains discretion as to whether to grant the motion." *Id.* On appeal, Reichel argues there was good cause to modify the scheduling order and challenges several conclusions as "clearly erroneous or contrary to law." ECF No. 197 at 4–5.

Reichel challenges Magistrate Judge Menendez's conclusion that Reichel "ha[d] not shown that Proseal negligently or intentionally failed to produce information about the PLC Code [the bomb] early enough for Reichel to meet the amendment deadline." ECF No. 193 at 5; *see* ECF No. 197 at 5. Reichel says Proseal America "hid[] the ball" and cites examples. Reichel identifies two interrogatory answers that did not disclose the upload of

6

the kill switch as an "equipment modification" or that a Proseal UK employee, Jack Ralph, had written the PLC code. *See* ECF No. 140-13 at 15–17, 21–22; ECF No. 141-4. Magistrate Judge Menendez considered these examples and the applicable good-cause factors. She concluded that, if the answers were incomplete, they did not excuse Reichel's lack of diligence. ECF No. 193 at 5–6. Reichel did not move to compel more complete answers.[2] *Id.* at 5 n.3. Most or all of the information Reichel characterizes as "hidden" was in emails that Proseal America produced almost three months before the deadline to amend. Despite this, and its awareness of the kill switch since January 2019, Reichel never sought discovery tailored to the "bomb," "kill switch," or "PLC code"; it did not take depositions until after the deadline to amend; and it did not ask "to extend the amendment deadline before it expired, which it certainly could have done if it believed depositions would not occur until after September."[3] *Id.* at 5–6; *see S. Grouts & Mortars, Inc. v. 3M*

---

[2]     Proseal America interposed overbreadth objections to each interrogatory that may explain the incompleteness Reichel complains of. In disclosing "all changes or modifications" to Reichel's machines, Proseal America limited its production of documents to those showing changes or modifications "made in response to Reichel's order." ECF No. 140-13 at 21. Likewise, Proseal America limited its identification of persons "involved in the research and development, design, manufacture, assembly, troubleshooting, and servicing of the equipment" to "work performed in connection with Reichel's order" and to persons "primarily involved" in those functions. *Id.* at 15–16. Magistrate Judge Menendez's observation that Reichel did not serve a more tailored interrogatory or move to compel a more complete response was not, as Reichel argues, clearly erroneous or contrary to law. *See* ECF No. 197 at 11–12.

[3]     Reichel argues that it was error to "fault" it for not timely seeking an extension because (1) when Reichel moved to extend the amendment deadline from July 30 until "30 days following the completion of discovery," the deadline was only extended to September 15 and (2) Reichel did not discover the "new facts" until after the amendment deadline. ECF No. 197 at 10–11; *see* ECF Nos. 90, 104. Plainly, Reichel's failure to depose witnesses before the deadline or to seek another extension when it believed those

7

*Co.*, 575 F.3d 1235, 1242 (11th Cir. 2009) (opponent's "stonewalling" of discovery requests did not excuse untimely motion to amend when movant did not serve interrogatory or depose witness until amendment and discovery deadlines had passed); *City of Wyoming v. Procter & Gamble Co.*, No. 15-cv-2101 (JRT/TNL), 2018 WL 3647225, at *2 (D. Minn. Aug. 1, 2018). Reichel also cites two denials in Proseal America's answer to the first amended complaint, which Reichel says were "apparently false." ECF No. 197 at 7. But these denials were not verifiably false or so misleading as to mandate a good-cause finding, and this example is unavailing for the same reason as the first: the denials concerned information that Reichel already possessed. *See* ECF No. 61 ¶¶ 10, 87. Last, Reichel highlights Defendants' delay in disclosing a privilege log until after the amendment deadline. ECF No. 197 at 7–8. This argument is factually correct. Defendants delayed disclosing a privilege log by several weeks. They did so only after *Reichel* and Defendants *agreed* to exchange privilege logs after the amendment deadline. *See* ECF Nos. 140-2, 140-4, 140-5. It would defy reason to conclude that an agreed-to post-deadline disclosure kept Reichel from diligently meeting the amendment (or any other) deadline.

Reichel argues that Magistrate Judge Menendez clearly erred by finding that emails Proseal America produced were sufficient notice that the kill switch was "uploaded to the equipment and modified after the machines were sold." ECF No. 197 at 8–9. Reichel says the emails were "cryptic" and "did not unambiguously establish a surreptitious post-sale

---

depositions could be delayed are relevant to whether it acted diligently. Considering this conduct in the good-cause analysis was not clearly erroneous or contrary to law. *See, e.g.*, *Solutran, Inc. v. U.S. Bancorp & Elavon, Inc.*, No. 13-cv-2637 (SRN/BRT), 2017 WL 89558, at *4 (D. Minn. Jan. 10, 2017).

installation of the bomb or Proseal UK's role." *Id.* at 9–10.  But the correct standard is not whether Reichel had evidence unambiguously establishing its cause of action.  It's enough that Reichel had information "sufficient to put [it] on notice that further discovery might lead to such evidence." *Solutran, Inc.*, 2017 WL 89558, at *4.  The emails are just that.  In a December 2018 email, for example, Steve Lemasters, a service engineer with Proseal America, wrote to several Proseal America and Proseal UK employees: "Both machines have been updated with [latest] payment program.  I have verified at Jack's request that the PLC code is password protected and that the bomb is set for the correct time and date." ECF No. 162 at 4.  In other words, Lemasters set the "kill switch" at the direction of Jack Ralph, a Proseal UK employee.  A Proseal UK employee jokingly responded: "Dear FBI/MI5: its not an actual bomb." *Id.*  Later in the email thread, Gari Wyatt, CEO of Proseal America, asked whether the machine's "switch off date" could be "reset" to a later date. *Id.* at 3.  Ralph, using a Proseal UK email address and signature block, volunteered that he could "change this easily in both machines," and later confirmed he had "amended the date on both machines for when they are disabled to 1st Feb." ECF No. 165 at 2–5.  In another email, Ralph provided a password for "the bomb."  ECF No. 164 at 2.  Finally, in other emails, Ralph communicated directly with Reichel about the kill switch, including the steps needed to avoid the machines shutting down.  ECF Nos. 157-6, 157-9.  Together, these emails showed that Defendants modified the machines post-sale by uploading the PLC code and programming and reprogramming the date of the "kill switch," and that Proseal UK played a hand in that modification.  Reichel incorporated these emails into allegations in its Second Amended Complaint. *See, e.g.*, ECF No. 133 ¶¶ 11, 103–05.  If

Reichel lacked information to support the claims in its Third Amended Complaint, it was still on notice that a prudent investigation and other discovery might lead to such evidence. It was thus "incumbent on [Reichel] to make some effort to compel production of relevant discovery, or to seek to extend the deadline to amend pleadings." *Solutran, Inc.*, 2017 WL 89558, at *4; *see also Aviva Sports, Inc. v. Fingerhut Direct Mktg., Inc.*, No. 09-cv-1091 (JNE/JSM), 2010 WL 4193076, at *7 (D. Minn. Oct. 7, 2010); *Husky Ventures, Inc. v. B55 Invs., Ltd.*, 911 F.3d 1000, 1021 (10th Cir. 2018) ("[E]ven if [the movant] had not known the full extent of [its] litigation possibilities earlier, it squandered any opportunity to raise those claims by not diligently investigating the facts necessary to bring them.").

The conclusion that Reichel did not act diligently to meet the amendment deadline is an adequate basis to find good cause was lacking, so it is unnecessary to consider whether allowing the proposed amendments would cause unfair prejudice. *See Bradford*, 249 F.3d at 809. Because the denial of Reichel's motion to modify the scheduling order was not clearly erroneous or contrary to law, the April 30 order will be affirmed.

B

Reichel appeals the denial of its motion to compel under the attorney-client privilege's crime-fraud exception. ECF No. 217. In a diversity case, state law governs the resolution of attorney-client privilege claims. *Baker v. Gen. Motors Corp.*, 209 F.3d 1051, 1053 (8th Cir. 2000). To invoke the crime-fraud exception to attorney-client privilege under Minnesota law, the proponent must "establish a prima facie showing that the communication was (1) made in furtherance of a crime or fraud and (2) was closely related

10

to the fraud."[4] *Levin v. C.O.M.B. Co.*, 469 N.W.2d 512, 515 (Minn. Ct. App. 1991), *review denied*, (Minn. July 24, 1991).   Minnesota's appellate courts have rarely analyzed the crime-fraud exception and borrowed this two-part test from federal common law.  *Id.; see also In re BankAmerica Corp. Sec. Litig.*, 270 F.3d 639, 642 (8th Cir. 2001) (employing same two-part test).  Cases applying the exception under federal common law are therefore instructive.  *Cf. Rico v. State*, 472 N.W.2d 100, 108 (Minn. 1991) (federal decisions on § 1983 immunity instructive on state common law doctrine of official immunity); *Williams v. State*, 910 N.W.2d 736, 742 (Minn. 2018) ("When a Minnesota rule is modeled after a federal rule, federal cases are instructive in the interpretation of the corresponding Minnesota rule.").

Reichel argues that it was error to deny its motion on the basis that the attorney-client emails at issue are "collateral" to its claims.  Citing Rule 401 of the Federal Rules of Evidence, Reichel asserts that the emails are "relevant" because "Proseal America counterclaimed for the same money it previously tried to extort using the software bomb." ECF No. 217 at 10.  Reichel also contends that it made a sufficient prima facie showing beyond just "a temporal connection between the attorney-client communications and the kill-switch threats." *Id.* at 10–11.  These arguments are not persuasive.  Reichel has not

---

[4]     Before Magistrate Judge Menendez, Defendants noted that Virginia law may govern the privilege question "because the communications at issue were between two Virginia parties," but added that "no actual conflict exists between Minnesota and Virginia law." ECF No. 194 at 3 n.2.  On appeal, the parties rely solely on federal and Minnesota law. Because Minnesota is the forum and no party has raised a choice-of-law issue, Minnesota law will be applied here.  *See Progressive N. Ins. Co. v. McDonough*, 608 F.3d 388, 390 (8th Cir. 2010).

cited authority that Rule 401's relevance standard alone governs a court's decision to pierce the attorney-client privilege. Magistrate Judge Menendez correctly noted that some courts to analyze the crime-fraud exception have required a threshold showing that the attorney-client communications are linked to "a specific cause of action based on fraud or a cause of action requiring an element of fraud, such as fraudulent intent." *Triple Five of Minn., Inc. v. Simon*, 212 F.R.D. 523, 529 (D. Minn. 2002) (citing *In re BankAmerica Corp. Sec. Litig.*, 270 F.3d at 643); *see also Cardiac Sci., Inc. v. Koninklijke Philips Elecs. N.V.*, No. 03-cv-1064 (PAM/RLE), 2005 WL 8162788, at *2 n.1 (D. Minn. Feb. 4, 2005). At the very least, courts must consider "the relative importance to the case of the alleged privileged information" before piercing the privilege. *United States v. Zolin*, 491 U.S. 554, 572 (1989).

Applying these principles, it was not clear error to deny the motion because the contents of the attorney-client emails are collateral to Reichel's claims. The Second Amended Complaint asserts claims for breach of contract, negligence, and breach of express and implied warranties. ECF No. 133 ¶¶ 114–62. Reichel's claims will require showing that Defendants designed, manufactured, or provided machines not fit for their intended purpose or in breach of the Parties' agreement. The claims do not require showing fraud or that Defendants used the kill switch as leverage to collect payment. The communications Reichel seeks to compel post-date the conduct that bears on Defendants' claims, so they did not further a crime or fraud of relevance to this case. *See In re BankAmerica Corp. Sec. Litig.*, 270 F.3d at 643 (observing that advice which "only relate[s] to prior wrongdoing" will "necessarily fall outside the crime-fraud exception").

What is more, Reichel did not relent to Defendants' collection efforts and its machines were not disabled, if at all, until April 2019, when Reichel "had already on its own decided to shut down [the] machinery because it concluded that the machinery didn't perform as it was supposed to." Tr. 48–49; *see* Suppl. Cerda Aff. ¶ 4 [ECF No. 67]. Thus, even if Defendants' *collection efforts* are connected to Reichel's claims, they will be largely uncontested, and Reichel has not shown how Defendants' *communications with counsel* can be linked to any claim.

Reichel also argues that it was error for Magistrate Judge Menendez to "rest[] on [her] discretion under the facts and circumstances to sustain Proseal America's privilege designations" and, apparently, to rely on persuasive federal decisions in doing so. ECF No. 217 at 11. As noted above, however, Minnesota courts have derived the crime-fraud exception from federal common law, *Levin*, 469 N.W.2d at 515, and have committed broad discretion to judges applying it, *see id.* (reviewing for clear abuse of discretion); *Thomason v. Sappi-Cloquet, LLC*, No. A05-2031, 2006 WL 1985474, at *1–2 (Minn. Ct. App. July 18, 2006) (abuse of discretion); *In re Marriage of McCaslin v. McCaslin*, No. C1-95-1243, 1996 WL 81500, at *4 (Minn. Ct. App. Feb. 27, 1996) (clear abuse of discretion). Reichel identifies no distinction in the exception's application under federal common law and Minnesota law.

Reichel also appeals the denial of its motion to modify the scheduling order and to compel Proseal UK to respond to written discovery requests. Reichel first argues it was "legally erroneous" and "an abuse of discretion" for Magistrate Judge Menendez to find that fact discovery had closed seven months earlier. ECF No. 217 at 2–4, 8. In Reichel's

view, fact discovery had been "extended" or "reopened."  As support, Reichel cites a January 2021 order encouraging the parties to "continue with as much discovery and other work on the case as possible during the pendency" of Reichel's motion for leave to amend, ECF No. 154, and a footnote to the April 30 order which mentioned that discovery had been "extended," but that "no amendment to the scheduling order correspondingly moved the nondispositive motion deadline," ECF No. 193 at 9 n.4.

This ruling was neither clearly erroneous nor contrary to law.  At the parties' request, the fact-discovery deadline was extended to October 28, 2020, "with the exceptions that (1) the cut-off for a corporate representative deposition of Proseal UK" be extended to November 25, and "(2) if necessary, Proseal America [could] seek to enforce its previously-served non-party subpoenas after October 27."  ECF Nos. 125, 127.  The unambiguous scheduling order and "carefully delineated" extension do not permit an inference that fact discovery was extended beyond October 28.  Tr. 50–52.  Nor do later orders show that Magistrate Judge Menendez erred by concluding that fact discovery remained closed.  She reasonably construed the January 15 text-only order as "simply a response to the parties' request that [she] suspend the expert discovery and dispositive motion deadline[s] because Reichel had submitted [its] motion for leave to file [a] Third Amended Complaint that would[] change[] the scope of the litigation."  Tr. 50.  Reichel's reliance on a footnote from the April 30 Order is questionable.  That footnote (quite obviously) explains that when the court extended discovery earlier in the case, it did not extend the nondispositive motion deadline.  *See* Tr. 51.  This observation was part of Magistrate Judge's Menendez's reasoning for considering Reichel's untimely motion to

compel on the merits.  ECF No. 193 at 9 n.4.  It did not reflect a "broad-based allowance for new discovery with no schedule in place and no end in sight[.]"  Tr. 50.

Reichel also challenges the conclusion that its discovery requests were "overwhelmingly directed at issues [] relevant only to the Third Amended Complaint," and not to the operative Second Amended Complaint.[5]  ECF No. 217 at 4–5.  Reichel seems to look past the fact that, because fact discovery had closed, it needed to show good cause to modify the scheduling order under Rule 16(b).  *See* 6A Arthur R. Miller, Mary K. Kane, and A. Benjamin Spencer, *Federal Practice & Procedure* § 1522.2 n.20 (3d ed. Apr. 2021 Update) (collecting cases).  Thus, relevance aside, Reichel must show that it acted with diligence to meet the discovery deadline.  Besides a (misplaced) belief that fact discovery was ongoing, Reichel's appeal offers no basis to find that it did.  To the contrary, there were ample reasons to conclude that Reichel did not diligently pursue discovery from Proseal UK.  The court's scheduling orders were free of ambiguity, and despite cooperation from Proseal America's lawyers—who also represent Proseal UK—Reichel did not informally request documents from Proseal UK or serve it with a third-party subpoena before the close of discovery.  Tr. 32–34.  Reichel never apprised the court of any obstacles to obtaining discovery it thought necessary to assert claims against Proseal UK.  Quite the opposite.  Reichel repeatedly told the court that "most or all of the discovery that would be

---

[5]     Relatedly, Reichel argues it was "legally erroneous for the Court to raise overbreadth or relevancy objections on [Defendants'] behalf."  ECF No. 217 at 5.  Yet, as Defendants point out, Reichel filed its motion to compel seven months late, so it was Reichel's burden to show good cause—not Defendants' burden to disprove it.  ECF No. 221 at 8.

required to address claims against Proseal UK overlap[ed] with that already conducted[.]" ECF No. 119 at 6; *see also* ECF No. 123 at 24–29; ECF No. 148 at 17–19.[6]  When Reichel sought an extension to depose Proseal UK's corporate representative, its request was granted.  ECF Nos. 129, 131.  Meanwhile, Reichel waited seven months after the close of fact discovery before filing a motion to compel.  *See* ECF Nos. 127, 200.

Last, Reichel asserts that Magistrate Judge Menendez's failure to reopen discovery contravenes Rule 26(a) of the Federal Rules of Civil Procedure, which "contemplates all parties participating in discovery."  ECF No. 217 at 8–9.  Essentially, Reichel argues that Rule 26(a) entitled it to a fresh round of discovery with Proseal UK when it was re-added to the case.  But Rule 26(a) contains no such requirement.  Rule 26(a)(1) requires all parties to provide initial disclosures.  Proseal UK did so.  ECF No. 190-10.  Rule 26(a)(3) also requires parties to make pretrial disclosures at least 30 days before trial.  If this case goes to trial, Proseal UK will have to do so.  Still, Reichel says that not reopening discovery frustrates Rule 26(a)(1) because it allows Proseal UK "to identify the documents it has in its possession[,] . . . but not require their disclosure," and to "identify people with knowledge" but "not allow for [their] depositions to be taken or interrogatories to be interposed and answered."  ECF No. 217 at 9.  No doubt, there are other circumstances that might warrant re-opening discovery.  But "[t]he record developed during discovery belies [Reichel's] assertions that [it is] now the victim[] of some sort of ambush."  *Ritchie Risk-*

---

[6]     Magistrate Judge Menendez did not, as Reichel argues, conclude that it had "forfeited Proseal UK discovery" by its counsel's remarks during the October 1 hearing. ECF No. 217 at 7.  The remarks were cited as evidence that Reichel "had more than enough opportunity to gather additional documents from Proseal UK."  Tr. 53–54.

*Linked Strategies Trading (Ir.), Ltd. v. Coventry First LLC*, 282 F.R.D. 76, 80 (S.D.N.Y. 2012). Correctly applying Rule 16(b)(4)'s good-faith standard, Magistrate Judge Menendez observed that this is not the "typical case" and that Reichel had ample access to Proseal UK-focused discovery throughout the case. Tr. 29–30. Despite this access, and "even though there was always [an] effort to reintroduce [Proseal UK] into the case and show their involvement in the design," Reichel did not try to obtain the documents it now seeks from Proseal America or conduct third-party discovery. Tr. 32–34, 53. Instead, when it stipulated to extend fact discovery in October 2020, it sought permission only to depose Proseal UK's corporate representative. ECF No. 125. Thus, Proseal UK's re-addition to the case after the close of fact discovery does not render clearly erroneous or contrary to law the denial of Reichel's untimely motion to compel discovery. *See Boarman v. Cnty. of Sacramento*, 55 F. Supp. 3d 1271, 1275–76 (E.D. Cal. 2014) (substitution of defendant near discovery deadline did not excuse plaintiff's lack of diligence).

## ORDER

Therefore, based on the foregoing, and all the files, records, and proceedings herein,

**IT IS ORDERED THAT**:

1.     Plaintiff's Rule 72 Objections [ECF No. 197] to the April 30, 2021 Order [ECF No. 193] are **OVERRULED** and that ruling is **AFFIRMED**.

2.     Plaintiff's Rule 72 Objections [ECF No. 217] to the June 28, 2021 Order [ECF No. 211] are **OVERRULED** and that ruling is **AFFIRMED.**

Dated:  August 19, 2021                    s/ Eric C. Tostrud
                                           Eric C. Tostrud
                                           United States District Court